OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 90-302 |
| of | : | |
| | : | SEPTEMBER 26, 1990 |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
| | : | |
| RONALD M. WEISKOPF | : | |
| Deputy Attorney General | : | |
| | : | |

_____
_____

THE HONORABLE ROBERT C. FRAZEE, MEMBER OF THE ASSEMBLY, has requested an opinion on several questions relating to the operation of golf carts on local streets and highways which we have combined in paraphrase as follows:

1.  To what extent does State law permit golf carts to be operated on local public streets and highways in the absence of local legislative action under section 21115 of the Vehicle Code to designate portions of local streets and highways for combined use by golf carts and regular vehicular traffic?

2.  To what extent may local authorities extend or restrict the operation of golf carts on local streets and highways under their jurisdiction?

CONCLUSIONS

1.  Golf carts may be operated on local streets and highways with speed limits of 25 miles per hour or less despite an absence of local action under section 21115 of the Vehicle Code, if the carts are registered with the Department of Motor Vehicles, bear a license plate issued by the Department, and are properly equipped.

2.  If a local authority does act under section 21115 of the Vehicle Code to designate certain portions of local highways for combined use by golf carts and regular vehicular traffic, then golf carts that are not registered with the DMV, and that are not equipped as required by the Vehicle Code (if not operated during

1.                                                      90-302

darkness), may be operated on those designated portions of highway. Under subdivision (c) of section 21101 of the Code, local authorities may prohibit the operation of golf carts on particular local streets and highways if circumstances warrant. Section 21115 of the Code does not authorize local authorities to ban golf carts from operating on any public street or highway having a speed limit of 25 miles per hour or less within their jurisdiction, if the carts have been registered with the Department of Motor Vehicles, bear a license plate issued by the Department, and are properly equipped. Nor does the section permit local authorities to authorize the use of golf carts on any public highway under their jurisdiction with a speed limit in excess of 25 miles per hour, including the operation of the carts in a crossing zone which traverses such a highway.

ANALYSIS

Residents of several communities in the State would like to drive their golf carts on local streets from their homes to nearby golf courses, in part because there are insufficient facilities at the courses to store them. At present the legality of their doing so is questioned because of uncertainty in the interrelationship of two sections of the Vehicle Code that deal with the operation of golf carts on local streets and highways. The purpose of this Opinion is to dispel that uncertainty.[1]

Section 21716 of the Code provides that "No person shall operate a golf cart on any highway except in a speed zone of 25 miles per hour or less." Under section 21115, local authorities may permit golf carts to be operated along with regular vehicular traffic on certain highways within their jurisdiction, under such rules and regulations as the local authority may prescribe. The

_____

[1]As a preliminary matters we note the following:

(a) Unidentified references to code sections in this Opinion refer to sections of the Vehicle Code.

(b) When we speak of golf carts, we do so as the Legislature has, as meaning "a motor vehicle having not less than three wheels in contact with the ground, having an unladen weight less than 1,300 pounds, which is designed to be and is operated at not more than 15 miles per hour and designed to carry golf equipment and not more than two persons, including the driver. (§ 345; Stats. 1968, ch. 1303, p. 2456, § 1; emphasis added.)

(c) Since for Vehicle Code purposes the term "highway" also includes "street" (§§ 100, 360) and vice versa (§ 590), we will use them interchangeably as well to mean "a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel." (§§ 360, 590.)

section specifically gives local authorities the power to set speed limits on local highways designated for that combined use.[2]

The interworking of sections 21716 and 21115 thus presents various possibilities regarding the legality of operating golf carts on local public streets and highways absent local action, and the scope of local authority to affect the operation of golf carts on local streets in general. This gives rise to our two questions: To what extent may golf carts be operated on local public streets and highways in the absence of local legislative action under section 21115 of the Vehicle Code, and to what extent may local authorities extend or restrict the operation of golf carts on local streets and highways within their boundaries?

General Background. Before directly addressing the two questions, it is perhaps best to set forth the general background in which they both are set and which affects the resolution of each. This will involve carefully examining the wording of the pertinent Code sections and the legislative background in which they were wrought. The excursion will be somewhat detailed and lengthy, but it will clarify matters and stand us in good stead when we come to answer the particular questions.

We first look to the wording of the sections. (Cf. *People* v. *Belleci* (1979) 24 Cal.3d 879, 884; *Moyer* v. *Workmen's Compensation Appeals Board* (1973) 10 Cal.3d 222, 230; *Steilberg* v. *Lackner* (1977) 69 Cal.App.3d 780, 785; *Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591, 604.)

Section 21716. Section 21716 provides, as it has since it was first adopted in 1968, that

"No person shall operate a golf cart on any highway except in a speed zone of 25 miles per hour or less." (Stats. 1968, ch. 1303, p. 2457, § 4.)

The section thus consists of a negative prohibition ("No person shall operate a golf cart on any highway....") followed by an exception to that prohibition ("... except in a speed zone of 25 miles per hour or less."). There it is noteworthy that the Legislature has used the word "any" to describe the "highways" on which no person may operate a golf cart except in a speed zone of 25 miles per hour or less. The use of that indefinite adjective indicates that the Legislature meant for the section's coverage to

_____

[2]For purposes of the Vehicle Code, "local authorities" is defined as "the legislative body of every county or municipality having authority to adopt local police regulations." (§ 385.) In 67 Ops.Cal.Atty.Gen. 145, 148 (1984) we concluded that rubric would include a community services district that owns and maintains a road system.

be very broad and apply, without restriction or limitation, to all "highways" in the State over which it had power to legislate. (Cf. *Emmolo* v. *Southern Pacific Co* (1949) 91 Cal.App.2d 87, 92; 72 Ops.Cal.Atty.Gen. 216, 222-223 (1989); 68 Ops.Cal.Atty.Gen. 28, 31 (1985); 64 Ops.Cal.Atty.Gen. 192, 202 (1981); 20 Ops.Cal.Atty.Gen. 31, 33 (1952).) Since the word "highway" when used in the Vehicle Code also includes streets (Veh. Code, § 360), the section would also apply, without restriction or limitation, to all streets in the State over which the Legislature had the power to legislate.

In section 21 of the Vehicle Code the Legislature has expressed its plenary power and a State preemption over the regulation and control of traffic on all highways and streets in the state, including those under the jurisdiction of local authorities.[3] (See *Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 551; *County of Los Angeles* v. *City of Alhambra* (1980) 27 Cal.3d 184, 189; *Pipoly* v. *Benson* (1942) 20 Cal.2d 366, 371; *City of Lafayette* v. *County of Contra Costa* (1979) 91 Cal.App.3d 749, 755, 756; *Mervynne* v. *Acker* (1961) 189 Cal.App.2d 558, 561-562; 73 Ops.Cal.Atty.Gen. 13, 14-16 (1990); 68 Ops.Cal.Atty.Gen. 101, 102 (1985); 67 Ops.Cal.Atty.Gen. 1, 4, 5-6; 64 Ops.Cal.Atty.Gen. 707, 709-710 (1981); 55 Ops.Cal.Atty.Gen. 178, 179 (1972).) Section 21716 would therefore apply to all local streets and highways in the State: Under its general prohibition, no person could drive a golf cart on any local street except in a speed zone of 25 miles per hour or less. That would preclude the operation of golf carts on local streets having speed limits of more than 25 miles per hour.

Section 21115. We turn next to the wording of section 21115. There we see an example of the exception in section 21 that although the State has preempted the regulation of traffic on local streets and highways, local authorities may undertake to regulate traffic on local streets if they have been expressly authorized to do so in the Vehicle Code. (Cf. Veh. Code, § 21; *Rumford* v. *City of Berkeley*, *supra*, 31 Cal.3d at 550; *City of Lafayette* v. *County of Contra Costa*, *supra*, 91 Cal.App.3d at 749; 73 Ops.Cal.Atty.Gen. 13, 15, 16, *supra*; 68 Ops.Cal.Atty.Gen. 101, 102, *supra*.) In section 21115 the Legislature has given local authorities express power to designate particular portions of highways for combined use

---

[3]Section 21 of the Code provides as follows:

"Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the state and in all counties and municipalities therein, and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized therein."

by golf carts and regular vehicular traffic and to prescribe speed limits for them. The section, with its sentences numbered to facilitate future reference, currently provides as follows:

> "**[1]**If a local authority finds that a highway under its jurisdiction is located adjacent to, or provides access to, a golf course and between the golf course and the place where golf carts are parked or stored or is within or bounded by a real estate development offering golf facilities and is designed and constructed, so as to safely permit the use of regular vehicular traffic and also the driving of golf carts on the highway, the local authority may, by resolution or ordinance, designate the highway or portion of the highway for combined use and prescribe rules and regulations which shall have the force of law. **[2]**No highway shall be so designated for a distance of more than one mile from the golf course if the highway is not located within a development or beyond the area of a development, provided, the finding of the local authority in this respect shall be conclusive. **[3]**Upon the designation becoming effective it shall be lawful to drive golf carts upon the highway in accordance with the prescribed rules and regulations. **[4]**<u>The rules and regulations may establish crossing zones and speed limits and other operating standards</u> but shall not require that the golf carts conform to any requirements of this code with respect to registration, licensing, or equipment, except that if operated during darkness the golf cart shall be subject to the provisions of Section 24001.5 regarding equipment.

> "**[5]**The rules and regulations shall not be effective until appropriate signs giving notice thereof are posted along the highway affected.

> "**[6]**A `real estate development offering golf facilities,' for purposes of this section, means an area of single-family or multiple-family residences, the owners or occupants of which are eligible for membership in, or the use of, one or more golf courses within the development by virtue of their ownership or occupancy of a residential dwelling unit in the development." (Stats. 1968, ch. 1303, p. 2456, § 1; as amended by Stats. 1970, ch. 972, p. 1507, § 1; Stats. 1977, ch. 124, p. 560, § 1, Stats. 1989, ch. 389, p. ___, § 1; emphasis & sentence numbering added.)

Before discussing the interplay of this section with the prohibition of section 21716 we try first to understand its wording.

The first sentence of section 21115 gives local authorities power to designate certain highways under their jurisdiction for combined use by golf carts and regular vehicular traffic, and to prescribe rules and regulations for them. It also sets forth three criteria which must be met in order for a local authority to so act. The first is that the highway must be one that is under the "jurisdiction" of the local agency, i.e., it must be a highway within the road system of the local agency and one for which the agency is responsible. (Cf. *Gillespie* v. *City of Los Angeles* (1950) 36 Cal.2d 553, 559; 64 Ops.Cal.Atty.Gen. 335, 338 (1981); see also, 67 Ops.Cal.Atty.Gen. 145, 148, *supra* ["It is appropriate that the local public entity responsible for maintenance of particular public roads should have a measure of control over their use".].) This condition removes state highways from the purview of section 21115.[4]

The second condition precedent for invocation of local authority under section 21115 involves the location of the highway: the highway must either (i) be adjacent to (or provide access to) a golf course <u>and</u> be between the golf course and the place where golf carts are stored, <u>or</u> (ii) be within a real estate development offering golf facilities, as defined in sentence #6 of the section. The third criterion involves the design and construction of the highway: it must be designed and constructed so as to permit golf carts and regular vehicular traffic to safely use it together. (Cf. § 627 ["engineering & traffic survey"].) Again, if these three criteria are met a local authority may designate a particular highway or portion thereof for combined golf cart and regular traffic use and prescribe rules and regulations for it.

Sentence #2 of section 21115 confines the length of highway which may be so designated.

Sentence #3 of section 21115 spells out the consequences of the designation: once the highway or portion of it is designated for combined use by golf carts and regular vehicular traffic, "it [becomes] lawful to drive golf carts upon [it] in accordance with the prescribed rules and regulations [that the local agency may adopt]." Under sentence #4 of the section, those rules and regulations may include the establishment of "crossing

---

[4]California's road network may basically be categorized as consisting of state highways, county highways, and city streets. (See generally, 37 Cal.Jur.3d *Highways and Streets*, §§ 13-20.) Under the Streets and Highways Code, with which the provisions of the Vehicle Code are in *pari materia* and must be construed together (cf. *Gillespie* v. *City of Los Angeles*, *supra*, at 558; 64 Ops.Cal.Atty.Gen. 335, 339 fn. 3), a "state highway" is defined as "any highway which is acquired, laid out, constructed, improved or maintained pursuant to constitutional or legislative authorization." (Sts. & Hy. Code, § 24; cf., *id.*, div. 1.)

zones and speed limits and other operating standards" governing traffic on the highway. However, they may not require that the golf carts conform to any requirement of the Code with respect to registration, licensing, or equipment --except that if operated during darkness, the carts must conform to the provisions of section 24001.5 regarding equipment.[5]

With sections 21716 and 21115 thus in mind, we can proceed to juxtapose them. Section 21716 is cast in general terms and applies to all streets and highways in the State. It clearly prohibits the operation of a golf cart on any highway except in a speed zone of 25 miles per hour or less. We saw how that prohibition would apply to local streets and highways. However, under section 21115 local agencies may permit golf carts to use certain streets and highways under their jurisdiction together with regular vehicular traffic (§ 21115, sent. #1), and the section gives them specific authority to establish speed limits and other rules and regulations to govern the traffic on those streets and highways (*id.*, sent. #4). While the section restricts the location and length of the highways which may be so designated (*id.*, sents. #s 1 & 2), it makes no mention of restricting the speed limits which may be set by local authorities for them. In fact, the section also specifically provides that when a street or highway is designated for such combined use, "it shall be lawful to drive golf carts upon [it] in accordance with the prescribed rules and regulations." (*Id.*, sent. #3.)

Section 21115 thus makes lawful what would otherwise be unlawful, and therein lies part of the confusion which prompts our questions: If one could already lawfully drive golf carts upon local streets and highways with speed zones of 25 miles per hour or less, what more could the Legislature have intended for section 21115 to do toward making that activity lawful? Might the Legislature have intended that section 21716 operate only after a local authority had acted under section 21115 to permit the driving of a golf cart upon a local street or highway, thus essentially giving local authorities a veto over the use of golf carts on

---

[5]Division 12 of the Code sets forth the equipment requirements for "all vehicles ... when upon the highways." (§ 24001.) Section 24002 provides that "it is unlawful to operate any vehicle ... which is not equipped as required by [the] Code." Section 24001.5 provides that "a golf cart as defined in Section 345 shall only be subject to the provisions of [division 12] which are applicable to a motorcycle." (Stats. 1968, ch. 1303, p. 2457, § 5.)

"Darkness" is defined as "any time from one-half hour after sunset to one-half hour before sunrise and any other time when visibility is not sufficient to render clearly discernable any person or vehicle on the highway at a distance of 1,000 feet." (§ 280.)

streets and highways in their jurisdiction.  And then, was the authority granted by section 21115 meant to permit local authorities to approve the operation of golf carts on streets and highways having speed limits in excess of 25 miles per hour?

In answering our questions we follow several beacons for statutory construction.  First and foremost, we must try to ascertain the intent of the Legislature for enacting sections 21716 and 21115 and interpret them in such a way as to effectuate that purpose.  (Cf., *Sand* v. *Superior Court* (1983) 34 Cal.3d 567, 570; *Great Lake Properties, Inc* v. *City of El Segundo* (1977) 19 Cal.3d 152, 153; *Select Base Materials* v. *Board of Equalization* (1959) 51 Cal.2d 640, 645.)  To do so we looked first to the words of the sections themselves.  (*People* v. *Belleci*, *supra*, 24 Cal.3d at 884; *Moyer* v. *Workmen's Compensation Appeals Board*, *supra*, 10 Cal.3d at 230; *Steilberg* v. *Lackner*, *supra*, 69 Cal.App.3d at 785; *Rich* v. *State Board of Optometry*, *supra*, 235 Cal.App.2d at 604.)  But when we did that we saw how the wording of each statute appeared unambiguous when considered alone, but that certain ambiguities arose when the two were considered together.

We know that we must read the sections together in such a way as to harmonize their provisions and give effect to the terms of each.  (Cf., *People* v. *Black* (1982) 32 Cal.3d 1,5; *Palos Verdes Faculty Association* v. *Palos Verdes Peninsula School District* (1978) 21 Cal.3d. 650, 659; *Moyer* v. *Workmen's Comp. Appeals Bd.*, *supra*, at 230; *People* v. *Kuhn* (1963) 216 Cal.App.2d 695, 698; 68 Ops.Cal.Atty.Gen. 79, 82 (1985); 62 Ops.Cal.Atty.Gen. 701, 703 (1979).)  But as demonstrated, their wording presents several possibilities as to how they may interrelate and thus uncertainty exists in the exact relationship between them that was intended by the Legislature.  Fortunately "in the present instance both the legislative history of the statute[s] and the wider historical circumstance[s] of [their] enactment are legitimate and valuable aids in divining the statutory purpose [and thus aides in resolving that uncertainty]."  (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844; accord, *Sand* v. *Superior Court*, *supra*, at 570; *Grannis* v. *Superior Court* (1905) 146 Cal. 245, 247-248; *Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688.)  We therefore turn to the legislative history of the sections to solve the problem.

The 1968 Legislation.  Sections 21716 and 21115 were both adopted in 1968 as part of a single legislative enactment that added the five aforementioned sections to the Vehicle Code to specifically deal with the operation of golf carts on the State's highways.  (Stats. 1968, ch. 1303, pp. 2456-2457, §§ 1-5, adding Veh. Code §§ 345, 4019, 21115, 21716, and 24001.5, respectively.)[6]

_____

[6]Sections 345, 4019, 21716, and 24001.5 appear today as they were originally enacted in 1968; however section 21115 was

Prior to that time, the Vehicle Code did not treat golf carts differently from other vehicles as far as registration and equipment requirements were concerned. As today, under the code then no person could drive any "motor vehicle" on a highway unless it was first registered with the State Department of Motor Vehicles. (Veh. Code [1959], § 4000.) Since the Code defined "motor vehicle" as "a vehicle which is self-propelled" (*id.*, § 415; cf. *id.*, § 670[7]), golf carts came within the definition of "motor vehicle", and therefore had to be registered with the DMV in order to be driven on a street or highway. They also had to be appropriately equipped (*id.*, § 24002; cf. *id.*, § 24001)[8] and have displayed the appropriate license plate(s) (*id.*, §§ 4850, 5200-5202).

From documents in its legislative history we learn that the 1968 legislation (AB 840) was designed to provide special rules for the registration, required equipment, and operation of golf carts. (See e.g., *Report of Committee Consultant To Committee Members On AB 840*, Assembly Committee On Transportation and Commerce[9].) As ultimately enacted, the legislation did the

subsequently amended three times (Stats. 1970, ch. 792, *supra*; Stats. 1977, ch. 124, *supra*; Stats 1989, ch. 389, *supra*).

[7]Section 670 defined "vehicle" as "a device by which any person or property may be propelled, moved, or drawn upon a highway, excepting a device moved exclusively by human power or used exclusively upon stationary rails or tracks." (Veh. Code [1959], § 670.)

[8]Section 24002 of the 1959 Vehicle Code provided that "it is unlawful to operate any vehicle ... which is not equipped as required by this code...." Section 24001 of the Code provided that "This division [i.e., division 12 dealing with Equipment of Vehicles] ... unless otherwise provided, applies to all vehicles ... when upon the highways...."

[9]The cited *Report* of the Consultant to the Assembly Committee on Transportation and Commerce states:

"AB 840 was introduced at the request of a golf cart manufacturer in the author's district. [¶] In order for golf carts to be operated on any public roads at the present time, the golf cart must be registered with DMV and meet specified equipment requirements. The problem created by the current law is that very few, if any, golf carts are manufactured to meet these equipment requirements. However, some manufacturers are signing affidavits stipulating that their carts meet the Vehicle Code equipment standards in order to permit the purchaser to register the cart with DMV. [¶]It is felt it would be more reasonable if golf carts were required to meet the less restrictive vehicle equipment

following: (1) It added section 345 to the Vehicle Code to define "golf cart". (2) It added section 4019 to exempt golf carts from the registration requirements of the Code, but only when they were operated pursuant to section 21115. (3) It added section 21115 to authorize local authorities to designate up to one-half mile of certain highways under their jurisdiction for combined use by golf carts and regular vehicular traffic and to prescribe rules and regulations therefor. (4) It added our section 21716 to prohibit the operation of golf carts on any highway except in a speed zone of 25 miles per hour or less. And (5), it added section 24001.5 to specify that golf carts (as defined in section 345) were only to be subject to the equipment requirements of the Vehicle Code that were applicable to motorcycles. (Stats. 1968, ch. 1303, §§ 1-5, respectively.)

Three things are worthy of note regarding the 1968 golf cart legislation. One is that the 25 mile per hour speed limit for the highways upon which golf carts would be permitted to operate under section 21716 had been deliberately set by a Senate amendment on June 28, 1968; prior thereto, the speed limit of the zone in which they could operate had been fixed at 35 miles per hour. We surmise that the lower limit was imposed for safety reasons because it would be more consistent with the 15 mile per hour operational limit of golf carts as defined in section 345 (cf. fn. 1(b), *ante*).

Second, it is to be particularly noted that sections 21716 and 21115 came into the legislation at different times. AB 840 contained the addition of section 21716 to the Vehicle Code to restrict the operation of golf carts to speed zones of 25 miles per hour or less early in its gestation, and at a time when any addition of section 21115 was still in the offing. Thus when section 21716 was already considered, no mention yet was made of local authorities being able to designate portions of highway for combined golf cart and regular traffic use. That provision only came about with a Senate amendment on July 20, 1968 when section

---

requirements that apply to motorcycles rather than the equipment requirements for passenger cars." (*Report of Committee Consultant To Committee Members On AB 840*, Assembly Committee On Transportation and Commerce, *supra*.)

This document is properly considered in determining the Legislature's purpose for enacting AB 840. (See e.g., *Southern Cal. Gas Co.* v. *Public Utilities Com.* (1979) 24 Cal.3d 653, 659; *People* v. *Martinez* (1987) 194 Cal.App.3d 15, 22; *Ventura* v. *City of San Jose* (1984) 151 Cal.App.3d 1076, 1080; *Southland Mechanical Constructors Corp.* v. *Nixen* (1981) 119 Cal.App.3d 417, 427; *People* v. *Swinney* (1975) 46 Cal.App.3d 332, 342; *Maben* v. *Superior Court* (1967) 255 Cal.App.2d 708, 713.)

21115 was added to the Bill. (Sen. amdt. to AB 840, July 20, 1968.)

Third, it is to be noted that no mention was made at all in the 1968 legislation about local authorities being able to prescribe speed limits as part of the rules and regulations that they could adopt for a combined use highway. As we shall see, that specific authority was not to be granted until 1970. (Stats., 1970, ch. 792, p. 1507, § 1.)

In the 1968 statutory scheme devised for golf cart operation, section 21716 was the primary section. It established a maximum speed limit for golf carts operating on any street or highway in the State, independent of any action a local authority might take under section 21115, for that section made no mention of speed limits.[10] However, if a local authority did designate a portion of a local street or highway for combined golf cart and regular vehicular traffic under the section 21115, golf carts operating on it would not have to be registered with the Department of Motor Vehicles. And thus is solved the confusion of what section 21115 makes legal beyond that which section 21716 already permitted: Under section 21716, golf carts could already be driven on streets and highways in speed zones of 25 miles per hour or less, but they had to first be registered by the DMV. Now on a section 21115 street or highway it would be legal to drive them without that registration.

As noted, sections 21716, 24001.5, 4019, and 345 remain today as they were enacted in 1968. However, section 21115 was subsequently amended three times (Stats. 1970, ch. 792, *supra*; Stats. 1977, ch. 124, *supra*; Stats 1989, *supra*) and the first of those amendments specifically gave local authorities, authority to set speed limits on the one half mile portion of street or highway that they would designate for combined golf cart and regular vehicular traffic use. We therefore must look to that legislation to see if it was meant to change the statutory scheme established for golf carts in 1968.

The 1970 Legislation. Section 21115 was amended in 1970 by SB 35. (Stats. 1970, ch. 792, *supra*.) The major reason for the legislation was that residents of a particular adult residential golfing/retirement community found that the ½ mile limit of highway

---

[10]If there were any doubt as to the primacy of section 21716 over section 21115 we would, "`as a last resort ... apply the rule that the later provision in point of position controls the earlier provision although both are in the same statute and passed at the same time.' (*People* v. *Moroney* [1944] 24 Cal.2d 638, 645.)" (*Hartford Acc. etc. Co.* v. *City of Tulare* (1947) 30 Cal.2d 832, 835.) Section 21115 was added by section 3 of Chapter 1303 of the Statutes of 1968; section 21716 was added by section 4.

that could be designated by their local authority under section 21115 to exempt golf carts from Vehicle Code registration, was not sufficient to permit many of them to drive from their homes to the community golf course.  (See e.g., *Letter* from the Bill's author, Senator Nejedly, to Governor Reagan (Aug. 26, 1970), *post*; *Description of SB 35*, Assembly Transportation Committee, *post*; *Letter* from Senator Nejedly to J.W. Dent, Member of the Assembly (July 31, 1970); *Letters* from the Rossmoor Walnut Creek Golden Rain Foundation to the Bill's author (Oct. 3, 1969 and Jan. 7, 1970); *Letter* from the Rossmoor Golf Club to the Golden Rain Foundation (Oct. 22, 1969).)

The initial solution to the problem was to increase the length of local highway adjacent to a golf course that a local authority could designate for combined golf cart and regular vehicular use from ½ mile to 1½ miles.  (See SB 35 as introduced in the Senate on January 12, 1970.)  However, that approach was abandoned on February 19, 1970, when the Bill was amended in the Senate to speak instead of local authorities designating only local highways "within or bounded by a real estate development offering golf facilities" for any combined use.  (See Sen. amendments to SB 35, February 19, 1970.)[11]

But more important for our purposes, SB 35 was also amended on February 19th to specifically mention that the rules and regulations that a local authority might adopt to govern a combined use highway under section 21115, could include the establishment of speed limits.  The kernel of what is now sentence #4 of the section was added as follows:

> "Such rules and regulations may establish speed
> limits and other operating standards but shall not
> require that golf carts conform to any requirements of

---

[11]The authority of local agencies to designate local highways "adjacent to a golf course and between the golf course and the place where golf carts are parked or stored" for combined golf cart and regular vehicular traffic use was reinstated when SB 35 was amended for a final time, in the Assembly, on July 15, 1970.  [It is interesting to note that those amendments were drafted by the Legislative Counsel at the behest of the author of the original 1968 golf cart legislation (AB 840) because he did not wish to see that repealed.  (See *Letter*, D.E. Whittington, Deputy Legislative Counsel, to K. Cory, Member of the Assembly, dated July 13, 1970; *Memorandum*, J.A. Nejedly to J.W. Dent, Member of the Assembly, dated July 31, 1970.)]  The half mile limit for such a designation on a highway outside a development, originally imposed in 1968, was also reinstated at the same time.  (See, Ass. amendments to SB 35 of July 15, 1970; *Letter* of D.E. Whittington, *supra*; Legislative Analyst's *Analysis of SB 35*, July 21, 1970.)

this code with respect to equipment, registration, or licensing."

Thus, with this and the other amendments that were made to section 21115 in 1970, the section took form as it essentially appears today: A local authority could designate up to one half mile of a local street or highway adjacent to a golf course, or a local street or highway within a "real estate development offering golf facilities", for combined golf cart and regular vehicular traffic use, if it found that the street or highway was designed and constructed to safely permit that usage. And a local authority was given specific power to establish speed limits on the highways it designated for that combined use. Under section 4019, golf carts could be driven on section 21115 highways without having to be registered (or perforce licensed) with the Department of Motor Vehicles.[12]

It might appear from the 1970 amendment to section 21115 that local authorities, which could now set speed limits on combined use highways, could do so independently of section 21716, and that the primacy of the latter section, established in the 1968 legislation, had been reversed and now depended on local action. However, documents in the legislative history show that that was never intended to be the case.

As mentioned, the purpose for the 1970 amendment to section 21115 was to accommodate residents of certain communities offering golf facilities who lived more than one half mile from their golf course and could not drive their golf carts on the local streets from their homes to the course without first having to register them with the Department of Motor Vehicles. Other than making that accommodation, by permitting local authorities to designate all local streets within such a development for combined golf cart and regular vehicular traffic use to give them the benefits of section 21115, the 1970 legislation was not meant to change the basic scheme of golf cart regulation that had been established in 1968. And specifically, although the matter of

_____

[12]Section 21115 was once again amended in 1977. (Stats. 1977, ch. 124, p. 560, § 1.) The amendment extended to one mile, the length of highway outside a "real estate development offering golf facilities" that a local agency could designate for combined golf cart and regular vehicular traffic use. It also limited the equipment requirement of section 24001.5 to golf carts operated on combined use highways during darkness.

In 1989 the section was again amended. (Stats. 1989, ch. 389, p. ___, § 1.) Other than specifying that a local agency could provide "crossing zones" as part of the rules and regulations it would establish for a combined use street or highway, the amendment is not significant for our purposes.

local authorities establishing speed limits was now mentioned in section 21115, the legislative documents are replete with statements indicating that any street designated for combined use would still have to have a maximum speed limit of 25 miles per hour.

For example, we read the following in a description of SB 35 by the Assembly Transportation Committee:

"This bill was introduced at the request of the residents of the Rossmoor community in Walnut Creek. Rossmoor is a special community built for adults. [¶]The purpose of SB 35 is to permit Rossmoor residents to drive to and from their community golf course in a golf cart that has not been registered with DMV. However, the following Vehicle Code provisions regulating golf carts would still be retained:

"1. The street on which the golf cart is driven must be posted at 25 miles per hour or less.

"2. The driver of the cart must have a license.

"3. The golf cart must have certain prescribed equipment.

"...." (Emphasis added; see also ( Memorandum of J.A. Nejedly to J.W. Dent, supra.)

A similar description of SB 35 is found in the letter from the author of the Bill commending it to Governor Reagan for signature into law (Letter of State Senator John A. Nejedly to Governor Reagan, supra)[13] and similar statements were contained in a press release by the author when it was signed into law (Press Release, Office of Senator John A. Nejedly, September 4, 1970).

It is therefore seen that the 1970 legislation was neither meant to change the general scheme of golf cart regulation set in 1968, nor the specific need for a street designated by a local authority for combined golf cart and regular vehicular use to

---

[13]"This letter is to respectfully request your favorable consideration of my Senate Bill 35. [¶][¶]Specifically, the bill permits unregistered golf carts to be ridden within a real estate development of the type having a security gate and golf facilities. [¶]However, certain Vehicle Code provisions relating to golf carts would still be retained; namely, (1) the street on which the golf cart is driven must be posted at 25 mph or less; (2) the driver of the golf cart must have a license; (3) the golf cart must have certain prescribed equipment." (Emphasis added.)

have a speed limit of 25 miles per hour or less, which limit had been deliberately set by the legislature in 1968.

With this general background, we can proceed to answer the specific questions that were asked.

1.  Operating Golf Carts On Local Streets And Highways When A Local Authority Has Not Acted Under Section 21115.  We are first asked whether golf carts may be operated on local streets and highways, with speed limits of 25 miles per hour or less, if a local agency has not acted under section 21115 to designate portions of highways under its jurisdiction for combined golf cart and regular traffic use.  We conclude that they may, provided that they are properly registered and equipped.

We have seen in our examination of the legislative history of the State golf cart legislation how the Legislature has carefully provided rules for the operation of golf carts on the State's highways.  Sections 21716 and 21115 must not only be construed in relation to each other, but also in the context of that entire statutory framework in which they were wrought.  (Cf. *Turner* v. *Board of Trustees* (1976) 16 Cal.3d 818, 826; *Moyer* v. *Workmen's Comp. Appeals Bd*, *supra*, 10 Cal.3d at 230; *People* v. *Moroney* (1944) 24 Cal.2d 638, 642; *Earl Ranch, Ltd*. v. *Industrial Acc. Com*. (1935) 4 Cal.2d 767, 769; *Marrujo* v. *Hunt* (1977) 71 Cal.App.3d 972, 977.)  When we look to that whole package the pieces of our puzzle fall into place.

We saw that the 1968 legislation was meant to provide special statutory rules for the operation of golf carts on the streets and highways of the State, and that sections 21716 and 21115 were part of them, but had separate and independent reasons for their respective enactment.  Section 21716 was meant to set forth a carefully considered general rule for the operation of golf carts on streets and highways:  the section does not prohibit their operation, but does provide that they may only be operated in speed zones of 25 miles per hour or less.  As with other motor vehicles (cf. §§ 415, 670, *supra*), they can be operated if they are registered (§ 4000), properly equipped (per § 24001.5), and have an appropriate license plate displayed (§§ 4850, 5200-5202).  Thus, a golf cart which is properly equipped and registered may be operated upon a public highway having a speed limit of 25 miles per hour or less by a licensed operator in accordance with traffic laws because nothing in the Vehicle Code prohibits such operation.  (Cf. *Ex Parte Daniels* (1920) 183 Cal. 636, 639 ["The streets of a city belong to the people of the state, and every citizen has a right to the use thereof, subject to legislative control...."]; accord, *Rumford* v. *City of Berkeley*, *supra*, 31 Cal.3d at 549; *Escobedo* v. *State of California* (1950) 35 Cal.2d 870, 875-876;  *City of Lafayette* v. *County of Contra Costa*, *supra*, 91 Cal.App.3d at 753.)

Section 21115 was never meant to, and does not detract from that.  The section had a completely different reason for being enacted, viz, to provide a special rule to govern the operation of golf carts in the special situation of specifically designated one-half mile portions of local streets and highways where they could be driven without first being registered with the Department of Motor Vehicles (§ 4019), or perforce having the indicium of registration, a license, displayed.

We therefore conclude that golf carts may be operated on local streets and highways with a speed limit of 25 miles per hour or less, even if a local agency has not taken action under section 21115 to designate them for combined golf cart and regular vehicular traffic use.  However, before a golf cart may be so driven it must first be registered with the Department of Motor Vehicles, bear a Department issued license plate, and have appropriate equipment (§ 24001.5).

2.  <u>Local Agency Action Affecting Golf Cart Operation</u>.  Our second question asks the extent to which local authorities may extend or restrict the operation of golf carts on local streets and highways.  Specific inquiry is made as to (a) whether section 21716 limits the action local authorities may take under section 21115 to permitting the operation of golf carts on combined use highways which have a speed limit of 25 miles per hour or less; (b) whether local authorities acting under section 21115 can permit the operation of golf carts in crossing zones where the speed limit of the intersecting street exceeds 25 miles per hour; and (c) whether local authorities can prohibit the use of golf carts on local streets and highways altogether.

<u>Speed Limit Of Designated Highway</u>.  As we have seen, local authorities were given the specific authority to set speed limits for combined use highways in the 1970 amendment that was made to section 21115.  But as we have demonstrated, the legislative history of that amendment makes it clear beyond doubt's peradventure that when a local authority acts under the section, it may only designate those local streets and highways that have speed limits of 25 miles per hour or less for combined golf cart and regular vehicular traffic use.  The general prohibition set in section 21716 against golf carts operating otherwise was never meant to be overridden.

The legislature has given local authorities the power to decrease speed limits to 25 miles per hour on certain streets. (§ 22358.)  That would then permit the street to qualify for designation as a combined use highway.  But we believe the Legislature intended section 21716 to be an absolute ban on golf carts operating on any portion of highway having a speed limit exceeding 25 miles per hour.  As mentioned, that limit was deliberately set with traffic safety in mind, given the 15 mile per hour operational limit of a golf cart (cf. § 345).  We therefore

16.                                                        90-302

conclude that a local agency may not permit the operation of golf carts on local streets and highways with speed limits in excess of 25 miles per hour.

Crossing Zones.  Specific concern was raised whether a local agency, acting under section 21115, may permit the operation of golf carts in crossing zones which traverse a street or highway that has a speed limit of more than 25 miles per hour.  We conclude it may not.

Local authorities may only regulate traffic on public streets to the extent that they have been expressly authorized to do so in the Vehicle Code, and unless an express authorization appears therein, a local authority has no power in the area. (§ 21; see *Rumford* v. *City of Berkeley*, *supra*, 31 Cal.3d at 550; *City of Lafayette* v. *County of Contra Costa*, *supra*, 91 Cal.App.3d at 749; 73 Ops.Cal.Atty.Gen., 13, 15, *supra*; 68 Ops.Cal.Atty.Gen. 101, 102, *supra*.)  Moreover, any delegation of a power to local authorities to regulate traffic "is [to be] strictly construed...." (*Rumford* v. *City of Berkeley*, *supra* at 550, 553; see also, *City of Lafayette* v. *County of Contra Costa*, *supra* at 756; *People* v. *Moore* (1964) 229 Cal.App.2d 221, 228; 73 Ops.Cal.Atty.Gen., *supra*; 67 Ops.Cal.Atty.Gen. 1, 4, *supra*.)

Section 21115 was amended last year to permit local authorities to establish "crossing zones" for golf cart use.  (SB 48; Stats. 1989, ch. 389, *supra*.)  We understand a "crossing zone" to be a corridor that is designated across a street or highway that runs through a golf course, to permit golf carts to go from one part of the course to another.

However, when a local agency acts to establish a crossing zone it does so by authority of section 21115.  That section empowers local authorities to designate portions of certain highways for combined use by golf carts and regular vehicular traffic and to adopt rules and regulation to govern that traffic. The designation then permits the operation of golf carts on the highways so designated in accordance with those rules and regulations.  Section 21115 specifically provides that the rules and regulations may include the establishment of "crossing zones". But it must not be forgotten that the rules and regulations that a local agency adopts under the section are meant for the regulation of traffic on a combined use highway.  Thus the rules and regulations themselves apply only to highways or portions of highways that have been designated for combined use, but as we have shown, it is only those areas of highway that have speed limits of 25 miles per hour or less that may be so designated.  Thus, the crossing zones contemplated by section 21115 may only be located in a designated portion of a highway that has a speed limit of 25 miles per hour or less.  The section does not permit the operation of a golf cart in a crossing zone across a highway having a speed limit greater than 25 miles per hour.

In section 21716 the Legislature has plainly spoken:  "No person shall operate a golf cart <u>on any highway</u> except in a speed zone of 25 miles per hour or less."  (§ 21716; emphasis added.)  A crossing zone, though traversing a highway, is nonetheless <u>on</u> the highway it traverses.  (Cf. § 365 ["intersection"].)  Under section 21716 golf carts may not be operated there if the speed limit of the highway at that point is more than 25 miles per hour, because the zone in which the cart would operate would not be one of 25 miles per hour or less.

Lastly, we have seen how when 21716 was adopted in 1968, the Legislature deliberately set 25 miles per hour as the maximum speed limit that streets and highways could have if golf carts were to be operated upon them.  That limit, we surmised, was purposefully set because the Legislature considered its 10 mile an hour differential from a golf cart's upper operational limit to be the maximum that could be permitted on a combined use highway and still be consistent with traffic safety on it.  But those traffic safety considerations for a combined use highway are just as compelling in the situation where a golf cart crosses a street or highway, as when it travels along it.  Whether a golf cart travels parallel with regular vehicular traffic along a highway, or travels perpendicular to the highway and the vehicular traffic's flow, the difference between the cart's maneuverability and capabilities and that of the regular vehicular traffic is still there.

We therefore conclude that local authorities may not establish crossing zones across local streets or highways that have speed limits in excess of 25 miles per hour.

<u>A Local Authority Prohibiting The Use Of Golf Carts On Local Streets Altogether</u>.  The final specific inquiry made regarding the scope of local authorities powers to expand or restrict the operation of golf carts on local streets and highways, is whether they can ban their operation altogether.  The question as asked came in the context of section 21115, i.e., if local authorities do not act under that section to designate a local street or highway for combined golf cart and regular traffic use, are golf carts thereby precluded from using it.

We answered that in question one:  golf carts may be operated on any street or highway with a speed limit of 25 miles per hour or less independent of section 21115, and no action by a local authority is necessary to effect that permission.  We find now that no action by a local agency <u>under section 21115</u> can affect it.

Again, local authorities may only regulate traffic on public streets to the extent that they have been expressly authorized to do so in the Vehicle Code, and unless an express authorization appears therein, a local authority has no power in the area.  (§ 21; see, *Rumford* v. *City of Berkeley*, *supra*, 31

Cal.3d at 550; *City of Lafayette* v. *County of Contra Costa*, *supra*, 91 Cal.App.3d at 749; 73 Ops.Cal.Atty.Gen. 13, 15, *supra*; 68 Ops.Cal.Atty.Gen. 101, 102, *supra*.) As we have shown, section 21115 is positive in thrust; it <u>adds</u> to one's ability to drive a golf cart on certain local streets and highways because it enables one to avoid the necessity of first having to register the vehicle. (§ 4019.) The section and its legislative history are devoid of any indication that it was meant to derogate from the basic ability of being able to drive a properly registered golf cart on a local street, as long as its speed limit is 25 miles per hour or less. We therefore conclude that <u>under section 21115</u>, local authorities may not prohibit the operation of golf carts on local streets or highways, either through action or inaction.

However, the primary statute governing local control over highway uses is not section 21115, but rather section 21101 of the Vehicle Code. (Cf. 67 Ops.Cal.Atty. Gen. 1, 5, *supra*.) There, in subdivision (c) of the section, the Legislature has given local authorities the power to adopt rules and regulations "[p]rohibiting the use of <u>particular highways</u> [under their jurisdiction] <u>by certain vehicles</u> ...." (§ 21101, subd. (c); emphasis added.)

The Legislature's use of the word "certain" to describe the vehicles that local authorities can prohibit from using particular local streets and highway, indicates that it did not wish to define or particularize them on a statewide basis, but intended instead to leave the matter of saying exactly which types of classes of vehicles might be prohibited from using particular local highways to local discretion, as local conditions warranted. (Cf. 73 Ops.Cal.Atty.Gen. 13, 19, *supra.*) Thus,

"In 55 Ops.Cal.Atty.Gen. 178 (1955) we ... said that [although the phrase 'certain vehicles' was not defined (*Id.* at 182)], it was broad enough to permit a city or county to prohibit the use of particular highways or streets by certain classes of vehicles, such as those determined to be excessively noisy. (*Id.* at 183.) Our conclusion was cited in *City of Lafayette* v. *County of Contra Costa*, *supra*, 91 Cal.App.3d 749 in support of the proposition that subdivision (c) would permit a city to prohibit certain classes of vehicles, "such as trucks, or tractors, or oversize or 'excessively noisy' vehicles, or those lacking air-inflated tires," from using particular highways. (*Id.* at 756 fn. 2.) In 67 Ops.Cal.Atty.Gen. 1, *supra*, we again considered the subdivision and concluded that the phrase 'certain vehicles' gave local agencies some limited authority to restrict the roads on which certain cargoes, such as hazardous material, might be transported in the jurisdiction. (*Id*. at 5-7.) (73 Ops.Cal.Atty.Gen. at 19, *supra*.)

By parity of reasoning, we conclude that if local conditions warrant, a local agency could ban golf carts from _particular_ local streets under section 21101, subdivision (c).

But a caveat is in order. In 67 Ops.Cal.Atty.Gen. 1, _supra_, we noted that a number of qualifications had to accompany the grant of authority under section 21101, subdivision (c). Pertinent here were (a) that a local authority could not use that authority to thwart the application of other state laws (cf. 55 Ops.Cal.Atty.Gen. 178, 183, _supra_), and (b) that "as in all cases regarding the exercise of police powers, the [local action] must not be 'arbitrary, unreasonable, or confiscatory.' [Citations.]" (67 Ops.Cal.Atty.Gen., _supra_ at 6.) That means, in part, that there must be a valid governmental objective to be served and the means adopted to achieve it are reasonably related to doing so. (Cf. _Skyline Materials, Inc_. v. _City of Belmont_ (1961) 198 Cal.App.2d 449, 455; _Neary_ v. _Town of Los Altos Hills_ (1959) 172 Cal.App.2d 721, 726.)

A total ban on the operation of golf carts on _all_ local streets and highways would not be justified under section 21101, subdivision (c). Such action would not come within the specific grant of authority to "prohibit[] the use of _particular_ highways by certain vehicles" because the word "particular" means something less than all. (Webster's _Third New Intnl. Dict._ (1971 ed.) at p. 1646; see also, _Neary_ v. _Town of Los Altos_, _supra_, 172 Cal.App.2d at 728.) However, it is possible that valid, compelling, and legitimate reasons might exist for a local authority to find it necessary to ban golf carts from a particular local street or highway, and that a decision to do so would be proper under the circumstances. For example, if some problem was being caused by the operation of golf carts on a particular street or highway which could only be solved by prohibiting their operation on it, action taken by a local authority to ban the carts would be proper. Further, that action would no more impinge on state law, than would action taken by a local authority under subdivision (c) to ban any other type of vehicle that could otherwise travel on local streets and highways.

We therefore conclude that while local authorities may not ban golf carts from operating on all local streets and highways, they may prohibit their operation on particular local streets and highways under section 21101, subdivision (c), if that action is called for to remedy untoward circumstances brought about by the operation of the carts on the streets.

In answer to question two then we conclude as follows: Generally speaking, local authorities may not restrict golf carts from operating on any public highway within their jurisdiction having a speed limit of 25 miles per hour or less, if the carts have been registered with the Department of Motor Vehicles and are properly equipped as required by the Vehicle Code. However, if

circumstances warrant, they may ban golf carts from using particular streets and highways under section 21101, subdivision (c).  If a local authority designates a portion of highway for combined use by golf carts and regular vehicular traffic under section 21115, then golf carts that  are not registered with or licensed by the DMV may be used upon them.  But local authorities may not permit golf carts to be operated on streets and highways with speed limits in excess of 25 miles per hour, or in a crossing zone that traverses such a street or highway.

****