[Civ. No. 41550. First Dist.. Div. One. Apr. 10. 1979.]

CITY OF LAFAYETTE, Plaintiff and Appellant, v.
COUNTY OF CONTRA COSTA, Defendant and Respondent.

COUNTY OF CONTRA COSTA, Plaintiff and Respondent, v.
CITY OF LAFAYETTE, Defendant and Appellant.

**COUNSEL**

Claude H. Hogan, Robert N. Wood and Stephen Stublarec for Plaintiff and Appellant and Defendant and Appellant.

John B. Clausen, County Counsel, and Dennis C. Graves, Deputy County Counsel, for Plaintiff and Respondent and Defendant and Respondent.

**OPINION**

**ELKINGTON, J.**—The City of Lafayette (City) brought a declaratory relief action against the County of Contra Costa (County) seeking a judicial declaration "that it has the right to close Happy Valley Road within the City limits to through traffic and is entitled to do so by any means authorized or permitted by law including the installation of a traffic diverter." It appeals from an adverse judgment of the superior court which was entered in the action.

Evidence at the trial, as condensed by the City's appellate briefs, disclosed the following. "For several years, the City of Lafayette ('City') has been concerned with problems of pedestrian safety, vehicle accidents, injuries and pollution due to heavy use of Happy Valley Road (hereinafter sometimes 'Road'). In spite of numerous safety measures and improvements undertaken by the City, problems with the use of Happy Valley Road persisted and increased. [¶] in January 1975, the Lafayette City Council voted to close Happy Valley Road to through traffic except for drivers with an established need to use the Road. The City Council determined that this was the best way of promoting safe use of the Road while reducing the hazards caused by traffic greatly exceeding the Road's capacity. The partial closure was to be accomplished by installation of a 'traffic diverter' or automatic gate across the Road at a point within the City limits. Exempted drivers were to be furnished devices to open the gate."

The County responded with evidence, generally as follows. Happy Valley Road was the only convenient route for many persons of the traveling public in reaching recreational and other areas of the County including a state park. The rerouting of such traffic would ordinarily increase the traveling distance each way about 10 miles. The road was an "extremely critical emergency vehicle route," and "the effect of the proposed gate on emergency vehicle response, particularly fire vehicles, could well be disastrous." The partial closure would effectively bar through traffic by the public generally, and the manifest beneficiaries or "exempted drivers" were nearby residents who had prevailed upon the City's council to restrict the road's use to themselves.

The City contended at the trial, as it does here, that the proposed ordinance is a valid exercise of its "police power." It argues that its "police power is an extensive one, and in exercising it the [City's] legislative body possesses a 'very wide discretion' as to what is necessary and proper for a certain purpose. . . ." This wide discretion, it states, authorizes the City's council " 'to prohibit [some or] all vehicular traffic on any particular street when reasonably necessary to facilitate the flow of traffic or to promote the public health, safety or general welfare.' "

Disagreeing, the superior court in effect concluded that the City was without police power, or other authority, to deny use of Happy Valley Road to some members of the traveling public, while granting it to others.

We have read and considered the record and the arguments of the parties. We reach the conclusion that the superior court's determination was correct, and that the judgment must be affirmed. We state our reasons.

It is proper first to point out a manifest public policy of this state. It was early expressed by its high court in *Ex parte Daniels* (1920) 183 Cal. 636, 639 [192 P. 442, 21 A.L.R. 1172], as follows: "The streets of a city belong to the people of the state, and every citizen of the state has a right to the use thereof, subject to legislative control. . . . The right of control over street traffic is an exercise of a part of the sovereign power of the state. . . . While it is true that the regulation of traffic upon a public street is of special interest to the people of a municipality, it does not follow that such regulation is a municipal affair, and if there is a doubt as to whether or not such regulation is a municipal affair, that doubt must be resolved in favor of the legislative authority of the state."

More recently the same court elaborated upon the policy in *Escobedo* v. *State of California* (1950) 35 Cal.2d 870, 875-876 [222 P.2d 1] (overruled on other grounds, *Rios* v. *Cozens* (1972) 7 Cal.3d 792, 799 [103 Cal.Rptr. 299, 499 P.2d 979]): "Fundamentally it must be recognized that in this country 'Highways are for the use of the traveling public, and all have . . . the right to use them in a reasonable and proper manner, and subject to proper regulations as to the manner of use.' . . . 'The streets of a city belong to the people of the state, and the use thereof is an inalienable right of every citizen, subject to legislative control or such reasonable regulations as to the traffic thereon or the manner of using them as the legislature may deem wise or proper to adopt and impose.' . . . 'Streets and highways are established and maintained primarily for purposes of travel and transportation by the public, and uses incidental thereto. Such travel may be for either business or pleasure . . . The use of highways for purposes of travel and transportation is not a mere privilege, but a common and fundamental right, of which the public and individuals cannot rightfully be deprived . . . [A]ll persons have an equal right to use them for purposes of travel by proper means, and with due regard for the corresponding rights of others'."[1]

---

[1]To the same effect see *Harman* v. *City and County of San Francisco* (1972) 7 Cal.3d 150, 162 [101 Cal.Rptr. 880, 496 P.2d 1248]; *Atlas Mixed Mortar Co.* v. *City of Burbank* (1927) 202 Cal. 660, 662-663 [262 P. 334]; *People* v. *County of Marin* (1894) 103 Cal. 223, 232 [37 P. 203]; *Findley* v. *Justice Court* (1976) 62 Cal.App.3d 566, 572 [133 Cal. Rptr. 241]; *Clav* v. *City of Los Angeles* (1971) 21 Cal.App.3d 577, 587 [98 Cal. Rptr. 582]; *City of Imperial Beach* v. *Algert* (1962) 200 Cal.App.2d 48, 51 [19 Cal.Rptr. 144]; *People* v. *Amdur* (1954) 123 Cal.App.2d Supp. 951, 959 [267 P.2d 445]; *People* v. *City of Oakland* (1929) 96 Cal.App. 488, 497 [274 P. 438].

■ It thus appears, at least in the absence of legislative authority to the contrary, that a city may not restrict the right to travel upon one of its streets to its residents or to other "exempted drivers."

We direct our consideration now to whether the City's partial closure of Happy Valley Road was in any manner authorized by the Legislature.

As noted, the City argues that its proposed ordinance was a proper exercise of a "very wide discretion" under its "police power." It thus seems proper to point out the source and scope of the "police power" of a city of this state.

"The [state] legislature is possessed of the entire police power of the state, except as its power is limited by the provisions of the constitution." (*Frost* v. *City of Los Angeles* (1919) 181 Cal. 22, 28 [183 P.342, 6 A.L.R. 468]; and see *deAryan* v. *Butler* (1953) 119 Cal.App.2d 674, 681 [260 P.2d 98] [cert. den., 347 U.S. 1012 (98 L.Ed. 1135, 74 S.Ct. 863)]; *Strother* v. *Pacific Gas & Elec. Co.* (1949) 94 Cal.App.2d 525, 532 [211 P.2d 624]; *Mattei* v. *Hecke* (1929) 99 Cal.App. 747, 752 [279 P.470].) **(2)** The determination as to what portion, if any, of a state's police power shall be delegated to its lesser political entities is left to its people through constitutional processes or through their legislatures. (See *Keller* v. *United States* (1909) 213 U.S. 138 [53 L.Ed. 737, 29 S.Ct. 470]; *Patterson* v. *Kentucky* (1879) 97 U.S. 501 [24 L.Ed. 1115]; and see generally authority collected 56 Am.Jur.2d, Municipal Corporations, etc., § 423 et seq., p. 461 et seq.)

■ The people of California have made a *limited* delegation of the police power to cities. It is found in the state's Constitution, article XI, section 7, which declares: "A . . . city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations *not in conflict with general laws.*" (Italics added.)

Under this high authority a city's police power "is subject to displacement by general state law . . . ." (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 140 [130 Cal.Rptr. 465, 550 P.2d 1001].) And: "Whenever the Legislature has seen fit to adopt a general scheme for the regulation of a particular subject, the entire control over whatever phases of the subject are covered by state legislation ceases as far as local legislation is concerned." (*In re Lane* (1962) 58 Cal.2d 99, 102 [22 Cal.Rptr. 857, 372 P.2d 897].)

■ In 1935, upon enactment of the state's Vehicle Code, the Legislature determined to so preempt the field of local legislation in the area of motor vehicle traffic control. Section 458 of the Vehicle Code then provided: "The provisions of this division [relating to "traffic control"] are applicable and uniform throughout the State and in all counties and municipalities therein and no local authority shall enact or enforce any ordinance on the matters covered by this division unless expressly authorized herein."

Upon recodification of the Vehicle Code in 1959, the Legislature preempted the *entire field* covered by that code by substituting in place of section 458 the new section 21 which now states: "Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the State and in all counties and municipalities therein, and *no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized herein."* (Italics added.)

*Pipoly* v. *Benson* (1942) 20 Cal.2d 366 [125 P.2d 482, 147 A.L.R. 515] is a leading case on the effect of the Vehicle Code's section 21 and former section 458. There the issue concerned the effect of section 458 upon a municipal ordinance purporting to control vehicle traffic in a context already covered by the Vehicle Code. Citing earlier authority the court held (p. 371): " '[W]henever the State of California sees fit to adopt a general scheme for the regulation and control of motor vehicles upon the public highways of the state, the entire control over whatever phases of the subject are covered by state legislation ceases insofar as municipal or local legislation is concerned.' "

■ It will thus be seen that contrary to its argument, the City does *not* have a "very wide discretion" under the police power in legislating in the field covered by the Vehicle Code. Instead it has *no police power in that area at all,* "unless expressly authorized" by the Legislature.

The only such express authorization relied upon by the City, and conceivably apposite to the City's proposed ordinance is Vehicle Code section 21101 which, as here relevant, states:

"Local authorities may adopt rules and regulations by ordinance or resolution on the following matters:

"(a) Closing any highway to vehicular traffic when in the opinion of the legislative body having jurisdiction the highway is no longer needed for vehicular traffic."[2]

The Legislature has thus "expressly authorized" the City to close Happy Valley Road upon a determination that it "is no longer needed for vehicular traffic." The necessary corollary is a legislative determination that the road may *not* be closed *if needed* for vehicular traffic.

But the City contends that since section 21101, subdivision (a), would authorize *complete* closure of the road, it necessarily *implies* authority to *partially* close it, upon a finding that it is no longer needed for some of the vehicles which customarily use it.

■ ■■■■ It will be remembered that Vehicle Code section 21 confers upon the City power to legislate in the field of vehicular traffic control only where *"expressly"*[3] authorized by other provisions of that code. ■■ By no process of reasoning may it be said that section 21101, subdivision (a), *expressly* authorizes closure of Happy Valley Road to some vehicular traffic even though it be needed for other such traffic.

■ And it is firmly held that where legislative subject matter "has been preempted by [the Vehicle Code, it is] subject only to exceptions *expressly (not impliedly)* declared by the Legislature; . . ." (Italics added; *Holman* v. *Viko* (1958) 161 Cal.App.2d 87, 93 [326 P.2d 551].) ■■ The delegation to local authorities of power to make vehicular traffic rules and regulations "will be *strictly construed*, —such authority must be *'expressly (not impliedly)* declared by the Legislature' " (Italics added; *People* v. *Moore* (1964) 229 Cal.App.2d 221, 228 [40 Cal.Rptr. 121].)

It will thus be seen that the City's contention that section 21101, subdivision (a), must be deemed to have *impliedly* granted authority for

---

[2]Appropriately, neither party relies upon *subdivision (c)* which legislatively authorizes "local authorities" to prohibit "the use of particular highways by certain vehicles, . . ." That authority covers "certain *classes of vehicles*" such as trucks, or tractors, or oversize or "excessively noisy" vehicles, or those lacking air-inflated tires. (See 55 Ops.Cal.Atty.Gen. 178, 182-183.) It does not permit exclusion of *classes of persons* from using any of a city's streets.

[3]*Expressly* means " 'in an express manner; in direct or unmistakable terms; explicitly; definitely; directly.' " (*Le Ballister* v. *Redwood Theatres, Inc.* (1934) 1 Cal.App.2d 447, 448 [36 P.2d 827]; Black's Law Dict. (4th ed. 1951) p. 692.)

partial closure of Happy Valley Road is contrary to law, and to the clear language of that statute.

■ When the language of a statute is clear, a court interpreting it should follow its plain meaning. (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 156 [137 Cal.Rptr. 154, 561 P.2d 244]; *People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322].)

■ It will be noted that Vehicle Code section 21101, subdivision (a), gives full effect to the above mentioned policy that the "streets of a city belong to the people of the state, and the use thereof is an inalienable right of every citizen," and that "all persons have an equal right to use them for purposes of travel . . . ."

It follows that the City's proposed ordinance which would generally confine the right to use Happy Valley Road for purposes of travel to the City's residents, and deny that right to others of the traveling public, was unauthorized by any "police power," and was in derogation of section 21101, subdivision (a), and the public policy of this state.

We choose not to enter into the controversy whether the public interest of the state would be better served by permitting municipalities to *partially* close their streets under the circumstances of this case. There are, to be sure, conflicting interests and reasonably debatable questions. But a change of policy, if there is to be such a change, must be made by higher authority than this intermediate court of appeal.

We have closely considered the authorities relied upon by the City, i.e., *Simpson* v. *City of Los Angeles* (1935) 4 Cal.2d 60 [47 P.2d 474], and *Snyder* v. *City of South Pasadena* (1975) 53 Cal.App.3d 1051 [126 Cal.Rptr. 320]. Those cases indicate that courts will exercise liberality in accepting a local authority's determination that all, or part, of a street "is no longer needed for vehicular traffic," and the consequent closure to *all* such traffic. Neither purports to allow a city to close a street, or part of it, to the state's citizens generally but not, as in the case at bench, to its own residents or other "exempted drivers."

Nor is the recent case of *Arlington County Board* v. *Richards* (1977) 434 U.S. 5 [54 L.Ed.2d 4, 98 S.Ct. 24] of aid to the City. It holds (p. 7 [54

L.Ed.2d, p. 7]) that a community may impose "restrictions on the flow of outside traffic into particular residential areas," without offense to the Fourteenth Amendment's equal protection clause. It does not abridge a state's right if it shall so choose, *under its police power,* to require that a city close a street to all vehicular traffic, or to none.

We observe that the judgment recites: ". . . the City of Lafayette may not lawfully close Happy Valley Road by the proposed gate *or a permanent barricade.*" The City correctly points out that the right to close the road, or a portion of it, to all persons by "a permanent barricade" was neither sought, nor litigated, nor otherwise at issue at the trial. The judgment's phrase "or a permanent barricade," which we have emphasized above, will accordingly be stricken. We, of course, make no determination in respect of the City's right, if any, to erect such a permanent barricade.

The superior court will modify the judgment by striking therefrom the phrase "or a permanent barricade"; as so modified, the judgment is affirmed.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied May 8, 1979, and the opinion and the judgment were modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied July 5, 1979.