TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL

State of California

DANIEL E. LUNGREN
Attorney General

_____

|                              |   |                    |
|------------------------------|---|--------------------|
| OPINION                      | : |                    |
|                              | : | No. 91-1105        |
| of                           | : |                    |
|                              | : | <u>April 14, 1992</u> |
| DANIEL E. LUNGREN            | : |                    |
| Attorney General             | : |                    |
|                              | : |                    |
| RONALD M. WEISKOPF           | : |                    |
| Deputy Attorney General      | : |                    |
|                              | : |                    |

_____

THE HONORABLE TOM MAYS, MEMBER OF THE ASSEMBLY, has requested an opinion on the following question:

May a city close a street in its jurisdiction where it intersects with another city's boundary?

CONCLUSION

A city may close a street in its jurisdiction where it intersects with another city's boundary if the street is not part of a regionally significant roadway and if closing the street is necessary to implement the circulation element of the city's general plan.

ANALYSIS

A California city is considering the "closure" of one of its streets at the point where it enters the city from another jurisdiction by either extending the curb of an intersecting street or constructing another type of physical barrier to prevent through-traffic from using it.[1] The purpose of the proposed closure would be to abate the volume of through-traffic in a residential neighborhood where the street is used as a shortcut between two major east-west arterials and to get to and from a freeway.

We are asked whether the city may thus "close" the street. We conclude it may do so if that is necessary to implement the circulation element of the city's general plan and if the street

_____

[1]We place the word "closure" and its variants in quotation marks because, as we shall see, placing a barrier across a street to prevent through traffic from using it, is not "closing" the street as that word is used in the Vehicle Code. (Cf. *Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 551-554.)

is not part of a regionally significant road network.[2]  We do not and cannot address the fact-based question of whether any particular street is a "regionally significant road," or if its closure is "necessary" under a city's general plan.

Since the state has preempted the entire field of traffic control, any right of a local authority to interfere with the free flow of traffic, as by closing a street, must be derived from an express delegation of authority from the Legislature.  (Cf. Veh. Code, § 21; *Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 550; *City of Poway* v. *City of San Diego* (1991) 229 Cal.App.3d 847, 858; *Uhler* v. *City of Encinitas* (1991) 227 Cal.App.3d 795, 806; *City of Lafayette* v. *County of Contra Costa* (1979) 91 Cal.App.3d 749, 756; 73 Ops.Cal.Atty.Gen. 273, 275-276 (1990).)[3]

The Legislature has granted local authorities the requisite power to regulate various aspects of traffic on their streets and highways.  (See, e.g., § 21100 et seq.)[4]   Most relevant to justify that contemplated here is the authority found in section 21101 which sets forth several circumstances under which a local jurisdiction may "close" a local street or highway.[5]  It provides in part as follows:

"Local authorities, for those highways under their jurisdiction, may adopt rules and regulations by ordinance or resolution on the following matters:

"(a) Closing any highway to vehicular traffic when, in the opinion of the legislative body having jurisdiction, the highway is no longer needed for vehicular traffic.



"....................

---

[2]Since the thrust of the requestor's interest concerns the Vehicle Code, we do not explore other areas which may impact on whether the city may close the street, such as the necessity for an environmental impact report under the California Environmental Quality Act (Pub. Res. Code, § 21000 et seq.).  (See *Uhler* v. *City of Encinitas* (1991) 227 Cal.App.3d 795; *Chamberlain* v. *City of Palo Alto* (1986) 186 Cal.App.3d 181.)

[3]All section references hereafter are to the Vehicle Code unless otherwise specified.

[4]Since for purposes of the Vehicle Code the terms "street" and "highway" are synonymous (cf. §§ 100, 360, 590), we will use them interchangeably as well to mean "a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel." (§§ 360, 590); cf., *Rumford* v. *City of Berkeley, supra*, 31 Cal.3d at 550, fn. 5; *City of Poway* v. *City of San Diego* (1991) 229 Cal.App.3d 847, 853, fn. 3; 73 Ops.Cal.Atty.Gen. 273, 274, fn. 1 (1990).)

[5]We note that subdivision (d) of section 21100 permits local authorities to regulate traffic by means of "official traffic control devices...."  However, a traffic barrier with curbs extended across a street is not a "traffic control device."  (Cf. § 400 [A "traffic control device" is "any sign, signal, marking, or device ... placed or erected by authority of a public body ... for the purpose of regulating, warning, or guiding traffic, but does not include islands, curbs, traffic barriers, or other roadway design features"]; see also, *Uhler* v. *City of Encinitas, supra*, 227 Cal.App.3d at 807.)

We also take occasion to note that we do not deal with vacating a street, under sections 8300-8363 of the Streets and Highways Code, when it is "unnecessary for present or prospective public use." (Sts. & Hy. Code, § 8324, subd. (b).)

"(f) Prohibiting entry to, or exit from, or both, from any street by means of islands, curbs, traffic barriers, or other roadway design features to implement the circulation element of a general plan adopted pursuant to Article 6 (commencing with Section 65350) of Chapter 3 of Division 1 of Title 7 of the Government Code. The rules and regulations authorized by this subdivision shall be consistent with the responsibility of local government to provide for the health and safety of its citizens."[6]

At first blush it might appear that the contemplated closure would be justified under subdivision (a) of section 21101. However, there are two problems in so doing. First, it is not claimed that the street "is no longer needed for vehicular traffic." To the contrary, the reason for wanting to close it is because of too much traffic, not too little. (See *City of Poway* v. *City of San Diego, supra,* 229 Cal.App.3d at 861, fn. 10.) But in any event, the type of closure that is contemplated is not the type envisioned by subdivision (a).

In *Rumford* v. *City of Berkeley, supra*, 31 Cal.3d 545, our Supreme Court said that when subdivision (a) speaks of "closing any highway to vehicular traffic," it means exactly what it says: completely closing the street to *all* traffic. (*Id.* at 552.) Specifically, it held that the subdivision does not provide authority to *partially* close a street to some traffic while leaving other traffic free to use it (*Id.* at 554), and more particularly, that it does not provide authority for a local jurisdiction to place a physical barrier across a street in order to "close it to through traffic while allowing its use [on either side of the barrier] for neighborhood purposes." (*Id.* at 551; see also, § 21101.6; *City of Lafayette* v. *County of Contra Costa, supra*, 91 Cal.App.3d at 757; 68 Ops.Cal.Atty.Gen. 101, 103 (1985).)[7]

The Legislature responded to the *Rumford* decision by enacting subdivision (f) of section 21101. (Stats. 1982, ch. 681, § 83; Stats. 1982, ch. 749, § 5; Stats. 1983, ch. 291, § 5.) In its present form, as quoted above, subdivision (f) permits local authorities, for those highways under their jurisdiction, to "prohibit entry to, or exit from ... any street by means of islands, curbs, traffic barriers, or other roadway design features to implement the circulation element of a general plan...."

---

[6]Government Code section 65300 et seq. set forth a comprehensive scheme for the enactment and amendment of general plans by local governments. "`The general plan is atop the hierarchy of local government law regulating land use....' [Citation]." (*City of Poway* v. *City of San Diego, supra*, 229 Cal.App.3d at 859.) Under section 65302 of the Government Code, general plans are required to include certain planning elements, including a "circulation element consisting of the general location and extent of existing and proposed major thoroughfares [and] transportation routes ... correlated with the land use element of the plan."

[7]The legality of devices other than barriers was not an issue before the court in *Rumford* (31 Cal.3d at 558) and, as mentioned, it distinguished between devices placed *upon* a street for the purpose of regulating traffic and devices which were structurally part of the street itself. (*Id.* at 557.) Particularly it said that "[r]elatively permanent, physical changes in the width or alignment of roadways that are effected by islands, strips, shoulders, and curbs clearly are within [cities' broad powers to construct and maintain streets (e.g., Gov. Code, § 40401; Sts. & Hy. Code, § 5101)] though of course they may alter patterns of traffic." (Id. at 556.)

Subdivision (f) of section 21101 was recently analyzed by the Court of Appeal in *City of Poway* v. *City of San Diego*, *supra*, 229 Cal.App.3d 847. The court held that under this subdivision, the City of San Diego could not close a city surface street within its jurisdiction near where the road continued into another city. (*Id.* at 852, 864-867.) After describing in detail the legislative history of section 21101 and judicial decisions construing it, the court said:

"Based on this reasoning, we do not believe that the Legislature intended that section 21101, subdivision (f) create new powers in local authorities to close roadways. Such authorities are restricted by the terms of the section to regulation of `those highways under their jurisdiction;' however, the Legislature did not specify `under their *exclusive* jurisdiction.' ...

"Assuming that the addition of the term, `for those highways under their jurisdiction,' to the preamble of section 21101 was an effort by the Legislature to limit the delegation of power over traffic affairs ... we think that ... subdivision (f) should not be interpreted to allow one municipality to close its portion of a regionally significant, safely designed and maintained roadway for reasons of self-interest, to the detriment of those other members of the motoring public who seek to travel the entirety of that road. `The streets of a city belong to the people of the state, and every citizen of the state has a right to the use thereof, subject to legislative control....' [Citation.] A proper interpretation of the term `jurisdiction' as used in section 22101, subdivision (f) is a narrow one which recognizes that one local authority's actions within its own jurisdiction may not infringe upon the rights of other citizens of the greater metropolitan area to travel from community to community on publicly owned and controlled streets and highways." (*Id.* at 865-866.)

In the *City of Poway* case, the street in question was designated as a "major street" in San Diego's general plan and as a "major arterial" in Poway's general plan. (*Id.* at 852-853.) The court found the street to be a "regional roadway" and framed the issue as to whether "section 21101, subdivision (f) would allow a local authority to implement the circulation element of its general plan by closing a regional roadway in order to prevent the local inconveniences created by large volumes of through traffic through the local authority's jurisdiction." (*Id.* at 857.) In concluding that it did not, the court again stressed the importance of regional roadways:

"Regionally significant streets or highways perform a regional, not a municipal function. The fact that some hardship is created by the intensive use of a road upon those whose homes or businesses are located along the roadway is not dispositive in light of these well-established principles. A parochial decision that goes beyond the scope of section 21101 to close part of a functional regional road that crosses two or more jurisdictions, by means of a general plan or its amendment, is inconsistent with settled law. Section 21101, subdivision (f) does not authorize the action taken by San Diego to maintain the closure of this completed road." (*Id.* at 867.)

Subdivision (f) of section 21101, as interpreted by the court in *City of Poway*, does not authorize "closure" of a regionally significant roadway regardless of the circulation element provisions of a general plan.

In answer to the question presented, therefore, we conclude that a city may close a street in its jurisdiction where it intersects another city's boundary if doing so is part of implementing the circulation element of the city's general plan and the street is not a regionally significant roadway.

\*\*\*\*\*