TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 94-906 |
| of | : | |
| | : | March 16, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____


THE HONORABLE DENNIS L. MYERS, COUNTY COUNSEL, COUNTY OF MERCED, has requested an opinion on the following question:

May a county temporarily close to through traffic a highway under its jurisdiction where (1) after a public hearing the county determines, based on the joint recommendation of the sheriff's department and the Department of the California Highway Patrol, that there is serious and continual criminal activity in the portion of the highway to be closed, (2) the highway has not been designated as a through highway or arterial street, (3) vehicular or pedestrian traffic on the highway contributes to the criminal activity, and (4) the closure would not substantially affect adversely the operation of emergency vehicles, the performance of municipal or public utility services, or the delivery of freight by commercial vehicles in the area to be closed?

CONCLUSION

A county may temporarily close to through traffic a highway under its jurisdiction where (1) after a public hearing the county determines, based on the joint recommendation of the sheriff's department and the Department of the California Highway Patrol, that there is serious and continual criminal activity in the portion of the highway to be closed, (2) the highway has not been designated as a through highway or arterial street, (3) vehicular or pedestrian traffic on the highway contributes to the criminal activity, and (4) the closure would not substantially affect adversely the operation of emergency vehicles, the performance of municipal or public utility services, or the delivery of freight by commercial vehicles in the area to be closed.

ANALYSIS

We are asked whether a county may temporarily close to through traffic a highway under its jurisdiction in order to alleviate ongoing criminal vandalism to private property adjoining the portion of the highway to be closed. The county would install locked gates upon the road and provide keys to property owners, emergency vehicle owners, and others as designated by the county director of public works. We conclude that the county may do so under prescribed statutory conditions.

Section 21 of the Vehicle Code[1] provides:

"Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the state and in all counties and municipalities therein, and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized therein."

In section 21 the Legislature has expressed its plenary power and preemption over the regulation and control of traffic on all highways and streets in the state, including those under the jurisdiction of local authorities. (*Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 551; *Pipoly* v. *Benson* (1942) 20 Cal.2d 366, 371; *City of Lafayette* v. *County of Contra Costa* (1979) 91 Cal.App.3d 749, 755, 756; 75 Ops.Cal.Atty.Gen. 80, 81 (1992); 73 Ops.Cal.Atty.Gen. 273, 275 (1990); 73 Ops.Cal.Atty.Gen. 13, 14-15 (1990); 68 Ops.Cal.Atty.Gen. 101, 102 (1985).) In *Citizens Against Gated Enclaves* v. *Whitley Heights Civic Assn.* (1994) 23 Cal.App. 4th 812, 820, the court recently summarized the governing principles as follows:

"As noted by the Attorney General: `Regulating the use of the public roads and highways by whatever means is outside the "municipal affairs" constitutional grant of authority to chartered cities.' (68 Ops.Cal.Atty.Gen. 101, 102, fn. 2 (1985).) Moreover, citing section 21, *Rumford*, and *Lafayette*, among others, the Attorney General stated: `Since the state has preempted the entire field of traffic control, any right of a local authority to interfere with the free flow of traffic, *as by closing a street*, must be derived from an express delegation of authority from the Legislature.' (Italics added.) (75 Ops.Cal.Atty.Gen. 80, 81 (1992).) We agree."

In analyzing whether a county has "express delegation of authority from the Legislature" to temporarily close to through traffic a highway under its jurisdiction as above described, we find that section 942.5 of the Streets and Highways Code is the earliest relevant enactment (Stats. 1957, ch. 1876, § 1) requiring our examination. It provides as follows:

"The board of supervisors may restrict the use of, or close, any county highway whenever the board considers such closing or restriction of use necessary:

---

[1]All references herein to the Vehicle Code are by section number only.

"(a) For the protection of the public.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"No liability shall attach to the county, or to the board of supervisors, for the restriction of use, or closing, of any county highway for the above public purposes.

"This section does not constitute a change in, but is declaratory of, the preexisting law."

Under the terms of Streets and Highways Code section 942.5, it has been held that while the members of the public have an inalienable right to use public highways in a reasonable manner without obstruction and interruption, their right is subject to the power of a county to impose reasonable regulations restricting the use of a county highway for the protection of the public. (*Acosta* v. *County of Los Angeles* (1961) 56 Cal.2d 208, 210; *People* v. *Sweetser* (1977) 72 Cal.App.3d 278, 284.)

Assuming the applicability of Streets and Highway Code section 942.5 to the circumstances presented for consideration, the issue arises whether its general provisions have been superseded by later and more comprehensive provisions of law. Specifically, section 21101.4 (Stats. 1992, ch. 80, § 1) provides:

"(a) A local authority may, by ordinance or resolution, adopt rules and regulations for temporarily closing to through traffic a highway under its jurisdiction when all of the following conditions are, after a public hearing, found to exist:

"(1) The local authority finds and determines that there is serious and continual criminal activity in the portion of the highway recommended for temporary closure. This finding and determination shall be based upon the recommendation of the police department or, in the case of a highway in an unincorporated area, on the joint recommendation of the sheriff's department and the Department of California Highway Patrol.

"(2) The highway has not been designated as a through highway or arterial street.

"(3) Vehicular or pedestrian traffic on the highway contributes to the criminal activity.

"(4) The closure will not substantially adversely affect the operation of emergency vehicles, the performance of municipal or public utility services, or the delivery of freight by commercial vehicles in the area of the highway proposed to be temporarily closed.

"(b)  A highway may be temporarily closed pursuant to subdivision (a) for not more than 18 months, except that period may, pursuant to subdivision (a), be extended for one additional period of not more than 18 months."

We believe that a county may not act under the authority conferred by Streets and Highways Code section 942.5 except in accordance with the terms and conditions set forth in section 21101.4.

Section 900 of the Streets and Highways Code states as follows:

"The authority conferred upon boards of supervisors by this division [Sts. & Hy. Code, §§ 900-1756] shall be exercised subject to such limitations and restrictions as are prescribed by this division or by other provisions of law, shall be in addition to any authority elsewhere conferred, and, except as otherwise expressly provided, shall be exercised only in relation to highways within their respective counties."

A county may thus act under the authority granted in Streets and Highways Code sections 900-1756 even though no comparable power to act is granted elsewhere (as one would obviously expect); however, such actions may be undertaken only in accordance with "limitations and restrictions . . . prescribed by . . . other provisions of law," including for example section 21101.4. (Cf. 23 Ops.Cal.Atty.Gen. 11, 13 (1954).) Nothing in section 21101.4 suggests that a county may act other than in accordance with the conditions prescribed in that section. It is noted in this regard that in the Legislature's grant of a particular power, "there is an implied negative; an implication that no other than the expressly granted power passes by the grant; that it is to be exercised only in the prescribed mode. . . ." (*Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 196; 76 Ops.Cal.Atty.Gen. 86, 89 (1993).)

This interpretation is consistent with the unequivocal terms of section 21, as revised and recodified in 1959: ". . . the provisions of [the Vehicle Code] are applicable and uniform throughout the State . . . and no local authority shall enact or enforce any ordinance on the matters covered by [the Vehicle Code] unless expressly authorized herein."[2]

A final issue remains concerning whether section 21101.4 itself is subject to limitations set forth in other provisions of law. In particular, section 21101.6 states as follows:

"Notwithstanding Section 21101, local authorities may not place gates or other selective devices on any street which deny or restrict the access of certain members of the public to the street, while permitting others unrestricted access to the street.

"This section is not intended to make a change in the existing law, but is intended to codify the decision of the Court of Appeal in *City of Lafayette* v. *County of Contra Costa* (91 Cal.App.3d 749).

---

[2]The term "local authority" as used in sections 21 and 21101.4 includes the legislative body of every county or municipality having authority to adopt local police regulations. (§ 385.)

"This section shall become operative January 1, 1990."

Section 21101 provides in part:

"Local authorities, for those highways under their jurisdiction, may adopt rules and regulations by ordinance or resolution on the following matters:

"(a)  Closing any highway to vehicular traffic when, in the opinion of the legislative body having jurisdiction, the highway is no longer needed for vehicular traffic.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(f)  Prohibiting entry to, or exit from, or both, from any street by means of islands, curbs, traffic barriers, or other roadway design features to implement the circulation element of a general plan. . . ."

As previously noted, the county in question proposes to install gates and provide keys to property owners and other designated parties, thus restricting the access of certain members of the public, while permitting others unrestricted access.  Nevertheless, section 21101.4 is not, in our view, subject to the limitations of section 21101.6.  First, by its express terms, section 21101.6 constitutes a limitation upon section 21101, while making no reference to section 21101.4.  Typically, a provision intended to supersede all enactments to the contrary begins with the phrase "Notwithstanding any other provision of law. . . ."  (Cf. 73 Ops.Cal.Atty.Gen. 296, 299 (1990); 64 Ops.Cal.Atty.Gen. 660, 662 (1981).)

Second, the application of section 21101.6 would render section 21101.4 null and void in its entirety since the closure of a highway to through traffic by its very nature restricts the use of the highway to those members of the public who would otherwise travel to a point of destination beyond the portion of the highway designated for closure, while permitting the use of the highway to those whose destination lies within the portion.  It is well settled that statutes relating to the same subject must be harmonized, both internally and with each other, to the extent possible.  (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387; 77 Ops.Cal.Atty.Gen. 185, 189 (1994); 75 Ops.Cal.Atty.Gen. 251, 252-253 (1992).)  A construction making some words surplusage is to be avoided.  (*Moyer v. Workmen's Comp. Appeals Board* (1993) 10 Cal.3d 220, 230; 73 Ops.Cal.Atty.Gen. 1, 4 (1990).)

Finally, section 21101.4 was enacted after section 21101.6, and deals specifically with the temporary closure of a road due to criminal activity.  In such circumstances we may apply the rule that where the same subject matter is covered by inconsistent provisions, one of which is special and the other general, the special is an exception to the general and controls unless an intent to the contrary clearly appears; further, where the special statute is later, it will be regarded as an exception to the prior general law.  (*American Friends Service Com.* v. *Procunier* (1973) 33 Cal.App.3d 252, 263; 71 Ops.Cal.Atty.Gen. 154, 161 (1988).)

It is concluded that a county may temporarily close to through traffic a highway under its jurisdiction where (1) after a public hearing the county determines, based on the joint recommendation of the sheriff's department and the Department of the California Highway Patrol, that there is serious and continual criminal activity in the portion of the highway to be closed, (2) the highway has not been designated as a through highway or arterial street, (3) vehicular or pedestrian traffic on the highway contributes to the criminal activity, and (4) the closure would not substantially adversely affect the operation of emergency vehicles, the performance of municipal or public utility services, or the delivery of freight by commercial vehicles in the area to be closed.

\* \* \* \* \*