Filed 7/15/15; pub. order 8/13/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DANNY EVERETT et al., | B254753 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC466880) |
| v. | |
| MOUNTAINS RECREATION AND CONSERVANCY AUTHORITY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Anthony J. Mohr and James C. Chalfant, Judges. Affirmed.

Law Offices of David R. Greifinger, David R. Greifinger; Goldstein Legal Services, Howard A. Goldstein; Arias, Ozzello & Gignac, Mark A. Ozzello, Mike Arias and Arnold Wang for Plaintiffs and Appellants.

Gilchrist & Rutter, Thomas W. Casparian and Yen N. Hope for Defendant and Respondent.

_____

Plaintiff, putative class representative and appellant Danny Everett, appeals from a judgment of dismissal after an order sustaining a demurrer to a class action complaint. The paramount issue on appeal is whether the Mountains Recreation and Conservancy Authority (MRCA) is unlawfully imposing administrative penalties — in substantive effect fines for moving traffic violations — on motor vehicle owners. Everett alleges the monetary penalties are being imposed on vehicle owners based on evidence obtained from an automated video camera traffic enforcement system that is operating in violation of the Vehicle Code. He alleges that the evidence supporting MRCA's penalties consists of no more than an image of a license plate, and does not show the actual driver who committed the moving traffic violation as required by the Vehicle Code. We hold that the MRCA's automated video camera traffic enforcement system is not operating in violation of the Vehicle Code.

**FACTS**

As always in reviewing a ruling on a demurrer, we accept as true all properly pleaded facts, as well as facts which are subject to judicial notice, but not deductions or conclusions of law or fact. (See, e.g., *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) In accord with these principles, the facts in Everett's case, as settled in the context of his pleading and MRCA's demurrer, are as follows.

*Background*

The Conservancy is a public entity formed by a "joint exercise of powers agreement" (see Gov. Code, § 6502) between the Santa Monica Mountains Conservancy, a public agency within the state's Natural Resources Agency (see Pub. Res. Code, § 33200 et seq.), and two local recreation and park districts (see Pub. Res. Code, § 5780 et seq.), the Conejo Recreation and Park District, and the Rancho Simi Recreation and Park District. Under the terms of the joint exercise of powers agreement, MRCA has been given designated powers to manage a number of parkland properties for the three

2

contracting agencies.  In short, three public agencies which own parkland property created a fourth public agency to manage their properties.[1]

In 2003, MRCA adopted an ordinance establishing rules, regulations and punishments for the parklands under its control.  During the following years, MRCA regularly amended its ordinance.  In 2010, MRCA adopted the form of its ordinance which is at issue in Everett's current case and which is known as the "Mountains Recreation and Conservancy Authority Park Ordinance" (hereafter the MRCA Ordinance).  The MRCA Ordinance governs such matters as park hours, smoking and fire restrictions, and the prohibition of alcoholic beverages.

Chapter 4 of the MRCA Ordinance governs "Vehicle Use."  Section 4.0 of the MRCA Ordinance provides:

> "Traffic control.  (a)  No person shall drive any vehicle, as defined in the California Vehicle Code, upon any MRCA owned or managed parkland, roadway or parking areas except upon, and subject to, any posted traffic control signs and/or pavement markings.  Traffic control signs include, but are not limited to, stop signs, speed limit signs, directional signs, turning signs, road closure signs, road hours of operation sign, commercial truck restrictions, and signs limiting vehicle use on trails. . . .
>
> "(b)  No currently registered owner of a motor vehicle shall allow or permit his or her vehicle to be operated in violation of § 4.0(a)."

MRCA Ordinance Section 4.2 authorizes MRCA to use "automated" photographic or video equipment to enforce section 4.0 of the ordinance.  Section 4.2.1 of the MRCA Ordinance provides:

---

[1]     For a general review of joint power agreements in California, see the Senate Local Government Committee's publication, Governments Working Together — A Citizen's Guide to Joint Powers Agreements (August 2007). http://senweb03.senate.ca.gov/committee/standing/GOVERNANCE/GWTFinalversion2. pdf (accessed March 18, 2015).

3

"Enforcement.  (a)  The only penalty for a violation of § 4.0 that is enforced by means of automated motor vehicle enforcement shall be by imposition of an administrative penalty pursuant to § 5.4, as authorized by Government Code § 53069.4.

"(b)  The only means of enforcement of § 4.0(b) shall be by the imposition of an administrative penalty pursuant to § 5.4, as authorized pursuant to Government Code § 53069.4."

Section 5.4 of the MRCA Ordinance provides:

"Automated motor vehicle enforcement.  Any violation of § 4.0 which is enforced by means of automated motor vehicle enforcement pursuant to § 4.2 shall be deemed a noncriminal violation for which no points authorized by the California Vehicle Code ('Point System for License Suspension') shall be assigned to the owner or driver of the vehicle.  The only penalty for a violation of § 4.0 that is enforced by means of automated motor vehicle enforcement shall be by imposition of an administrative penalty pursuant to § 5.4, as authorized pursuant to Government Code § 53069.4."

Under Government Code section 53069.4, subdivision (a), a local agency may make a violation of any ordinance adopted by the agency "subject to an administrative fine or penalty."  When a local agency elects to do so, Government Code section 53069.4, subdivision (a), commands that the local agency "shall set forth by ordinance the administrative procedures that shall govern the imposition, enforcement, collection, and administrative review by the local agency of those administrative fines or penalties."  At the same time, however, Government Code section 53069.4, subdivision (a), does not specifically dictate any particular procedure which must be afforded a person in connection with an agency's administrative procedures for imposing, enforcing and administratively reviewing the agency's administrative fines or penalties.

4

In accord with the provisions of the MRCA Ordinance noted above, MRCA has erected stop signs on certain publicly travelled roadways in the parklands that it controls, and has installed automated video camera traffic enforcement systems at certain of those stop sign locations. MRCA's automated video camera traffic enforcement systems do not record an image of a driver; the automated systems only records a video image of the license plates of a vehicle. At a stop sign where a MRCA automated video camera traffic enforcement system is installed, an in-ground sensor detects when an approaching vehicle is not slowing at the stop sign and triggers a video camera which is saved to a computer system. Later, a park ranger reviews the video. When the ranger visually observes a failure to stop, he prepares an "administrative citation" and mails it to the vehicle's registered owner.

MRCA Ordinance section 4.2.3(a) grants a registered owner of a vehicle the right to contest a MRCA administrative citation at a MRCA "administrative appeal hearing." At such a hearing, "the image that served as a basis of the [administrative] citation shall be prima facie evidence" of a violation MRCA Ordinance section 4.0. (*Ibid*.) Under MRCA Ordinance section 4.2.3(b), the following affirmative defenses are available to a registered vehicle owner:

> "(b) If a prima facie case has been established, the hearing officer may consider the following affirmative defenses, as to which the registered owner [of a vehicle] identified in the citation will have the burden of proof:
>
> "(1) That the automated motor vehicle enforcement system was not operating properly at the time of the offense.
>
> "(2) That the license plate number or other source of identification of the vehicle cannot be determined.
>
> "(3) That the motor vehicle or registration plates of the motor vehicle were stolen before the violation occurred.
>
> "(4) That the vehicle was operated without the consent of the registered vehicle owner.

5

"(5)  That other extenuating circumstances were present during the incident which, in the interest of justice, require dismissal."

Fairly construed, the MRCA Ordinance provides that, upon MRCA's collection of a video of a license plate, a registered owner of a vehicle is liable for a stop sign violation under section 4.0 of the ordinance, and its resulting administrative penalty, without proof that the vehicle owner was  driving the vehicle.  As the trial court accurately stated in ruling on a MRCA demurrer to one of Everett's earlier pleadings, "the driver's identity is not an element of the offense" under section 4.0 of the MRCA Ordinance.  Thus, unless a vehicle owner can prove (by an unspecified burden) that another person was driving his or her vehicle, and that the other person did not have the owner's consent to be driving the vehicle, then the vehicle owner pays.

On January 16, 2011, one of MRCA's automated video camera system recorded a vehicle registered to plaintiff and appellant Everett failing to stop at a stop sign on a roadway in a parkland property under MRCA's control.  On a date not ascertainable from the record, a MRCA park ranger issued and mailed an administrative citation to Everett.

Everett paid the administrative penalty of $175 indicated on the administrative citation, and requested an administrative hearing before MRCA to contest the citation.  On April 7, 2011, a MRCA administrative officer denied Everett's contest of the citation.  Everett did not appeal the administrative officer's decision to the superior court for a trial de novo as allowed pursuant to Government Code section 53069.4, subdivision (b).

On August 18, 2011, the Appellate Division of the Los Angeles County Superior issued its opinion in *Mountains Recreation Conservation Authority v. Kaufman* (2011) 198 Cal.App.4th Supp. 1 (*Kaufman*).  In *Kaufman*, the court addressed a citee's appeal from a judgment of the superior court on a trial de novo affirming a decision by a MRCA administrative hearing officer decision finding a violation of the MRCA Ordinance for failing to stop at a stop sign on property under MRCA's control.  The citee in *Kaufman* did not defend the administrative citation by directly challenging the legality of MRCA's automated video camera traffic enforcement system.  Rather, on a factual front, the citee

6

testified that he was not "'the driver of the vehicle cited for the moving violation.'" On a legal front, the citee argued that the video taken by MRCA's system did not show that he was the driver. (*Kaufman, supra*, 198 Cal.App.4th Supp. at p. 4.) The trial court found the citee guilty of the moving violation. On his appeal to the Appellate Division, the citee argued that sections 4.0 and 4.2.1 of the MRCA Ordinance were preempted by the Vehicle Code. (*Id*. at p. 5.) The citee argued that he could not be cited under the MRCA Ordinance at all, but only under the Vehicle Code. The *Kaufman* court rejected the citee's argument on appeal, finding there was "nothing in the record" before the court to support the citee's contention that the MRCA Ordinance "was enforced on a highway within the meaning of Vehicle Code section 360." (*Id*. at p. 7.)

***The Current Lawsuit***

In August 2011, Everett filed a class action complaint against MRCA. In August 2013, Everett filed his operative fifth amended complaint. It alleged three causes of action, listed respectively, as follows: declaratory relief; injunctive relief; and petition for writ of mandate. Everett's complaint alleged that the stop sign violation for which MRCA cited him (as well as the other members of the putative class) occurred on a "highway" as defined by Vehicle Code section 360, that Vehicle Code section 21 makes the provision of the Vehicle Code uniformly applicable to all "highways" located in California, that Vehicle Code section 21455.5 governs automated traffic enforcement systems, and that MRCA failed to comply with the requirements of Vehicle Code section 21455.5 in establishing its automated video camera traffic enforcement system.

MRCA filed a demurrer to Everett's complaint arguing, among other legal issues, that the Public Resources Code, not the Vehicle Code, gives MRCA the authority to regulate vehicle traffic within the parklands under its control.

On November 26, 2013, the court entered a minute order sustaining MRCA's demurrer to Everett's complaint without leave to amend. On January 9, 2014, the court signed and entered an order of dismissal of Everett's action. Everett filed a timely notice of appeal.

7

## DISCUSSION

### I.    The Statutory Issue

Everett contends the judgment must be reversed because the trial court erred in ruling that MRCA's automated video camera traffic enforcement system does not have to comply with the Vehicle Code.  Everett argues that the roadway in the MRCA-controlled parkland where he was ticketed is a "highway" as defined in Vehicle Code section 360.  It necessarily follows, argues Everett, that the Vehicle Code applies to and establishes the law governing the "highway" pursuant to Vehicle Code section 21.  We find no error.

### *The Vehicle Code*

Effective July 1, 2011, six months after MRCA issued its administrative citation to Everett, Vehicle Code section 21 was amended to read as follows:

"(a) *Except as otherwise expressly provided*, the provisions of this code are applicable and uniform throughout the state and in all counties and municipalities therein, and a local authority shall not enact or enforce any ordinance or resolution on the *matters covered by this code*, including ordinances or resolutions that establish regulations or procedures for, or assess a fine, penalty, assessment, or fee for a violation of, *matters covered by this code, unless expressly authorized by this code*.

"(b) *To the extent permitted by current state law, this section does not impair the current lawful authority of [MRCA], a joint powers authority, or any member agency constituted therein as of July 1, 2010, to enforce an ordinance or resolution relating to the management of public lands within its jurisdiction*."  (Italics added; Stats. 2010, ch. 616, § 1.)[2]

---

[2]    Everett's arguments on appeal are based upon the language of the current version of Vehicle Code section 21 quoted above.  Further, Everett's arguments include a significant discussion of the legislative history of the current version of Vehicle Code section 21.  Accordingly, we ignore the fact that a different version of Vehicle Code section 21 existed in January 2011, when MRCA ticketed Everett.

Vehicle Code section 21's language favoring uniformity of state vehicle laws, and generally prohibiting local agencies from enacting vehicle ordinances, speaks in terms of "matters covered by" the Vehicle Code; the section is not strictly limited to the subject of "highways."[3] This said, Vehicle Code section 21 makes the Vehicle Code applicable to matters covered by the Code, "[e]xcept as otherwise expressly provided . . . ." Further, a local ordinance is prohibited "unless expressly authorized by [the Vehicle Code]."

*The Public Resources Code*

As a so-called "joint powers authority," MRCA possesses the "common power" of its creating agencies as specified in the joint exercise of power agreement which created MRCA. (See Gov. Code, § 6500 et seq.) In other words, MRCA's powers are derived from the powers possessed by its creating agencies and given to MRCA by its creating agencies, or as otherwise granted by law.

Under Public Resources Code section 33211, subdivision (c), the Santa Monica Mountains Conservancy has the power to "[d]o any and all . . . things necessary to carry out the purposes of the [conservancy]." Under Public Resources Code section 33211.5, subdivision (a), certain prescribed "conditions of use" apply to property owned or subject to the management of the Santa Monica Mountains Conservancy, including that "[a]ll vehicle use . . . shall conform to posted signs." (*Id*., subd. (a)(3).) Read together, Public Resources Code sections 33211, subdivision (c), and 33211.5, subdivision (a), mean that the Santa Monica Mountains Conservancy has the power to do any and all things necessary to carry out the condition of land use in the conservancy, including the power to assure that all vehicle use shall conform to posted signs. There is no language in the noted Public Resources Code sections which refers to compliance with the requirements of the Vehicle Code. Under Public Resources Code section 5786.1, subdivision (i), recreation and park districts such as the Conejo Recreation and Park District and the

---

[3] Vehicle Code section 360 defines a highway to be "a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel. Highway includes street." Under this definition, the allegation in Everett's 5AC that the roadways in MRCA's parklands are "highways" as defined by Vehicle Code section 360 cannot be rejected as a matter of law.

9

Rancho Simi Recreation and Park District are given the power "[t]o adopt ordinances following the procedures of [Government Code sections 25120 through 25132]." There is no allegation in Everett's current case that MRCA failed to follow the requirements of the Government Code when it adopted the MRCA Ordinance.

*Analysis*

The trial court correctly ruled that it is "immaterial" whether or not the roadway in the MRCA-controlled parkland where Everett was administratively cited is a "highway" as defined in Vehicle Code section 360. Highway or not in Everett's case, we find that the MRCA Ordinance does not conflict with Vehicle Code section 21's general prohibition against local vehicle ordinances in favor of uniform state vehicle laws. There is no *conflict* between the MRCA Ordinance and the Vehicle Code in Everett's case, and thus no state law supremacy, for the following reasons.

MRCA's authority to adopt vehicle ordinances for the parklands under its control is derived from the provisions of the Public Resources Code discussed above. MRCA's power is not derived from the Vehicle Code's authorizations to local agencies to adopt rules and regulations for official traffic control devices such as stop signs. (See generally Veh. Code, § 21100, subd. (d).) As the court in *Kaufman, supra*, 198 Cal.App.4th Supp. 1 recognized, the Public Resources Code provisions involved in Everett's current case, which underpin the MRCA Ordinance, are intended to regulate different subject matters than the Vehicle Code, namely, public parklands on the one hand, and state highways on the other hand. (*Id*. at p. 7.) While there may be room for some overlaying control in an abstract examination, we agree with MRCA's position that the Vehicle Code defers to the Public Resources Code in the circumstances presented in Everett's current case.

Vehicle Code section 21, subdivision (b), expressly states that the section "does not impair" MRCA's authority "to enforce an ordinance . . . relating to the management of public lands within its jurisdiction." We find this language plain on its face. The language means that the uniform governance of the Vehicle Code on matters covered by the code is controlling, with the exception that this control "does not impair" MRCA's authority to enforce an ordinance relating to its "management" of public parklands.

10

The implicit implication is that MRCA's management is to be abided even where enforcement of a MRCA ordinance may not align with or may be different from, the Vehicle Code.

In adopting and enforcing the MRCA Ordinance, MRCA undoubtedly was acting in a "management" capacity over the parkland properties under its control. To "impair" means to "make worse; diminish in quantity, value, excellence, or strength; do harm to." (Webster's 3d New Internat. Dict. (2002) p. 1131.) Application of the Vehicle Code's provisions governing automated traffic enforcement systems, in particular Vehicle Code section 210,[4] plainly would diminish the value of, and or do harm to, MRCA's automated video camera traffic enforcement systems because the Vehicle Code requires automated traffic enforcement systems to have the capability of imaging the driver of a vehicle, and MRCA's system does not have that capability.

Everett proffers an argument based on legislative history in support of a contrary conclusion. Focusing on the first sentence segment of Vehicle Code 21, subdivision (b), i.e. — "To the extent permitted by current state law, . . . " — Everett argues that Vehicle Code section 21 reflects the Legislature's intent that MRCA may enforce traffic rules on its lands, but only "to the extent permitted by current state law," which includes abiding the Vehicle Code's requirements uniformly governing our state's highways, which would include the Vehicle Code's requirements for automated traffic enforcement systems. We are not persuaded.

The legislative history of Vehicle Code section 21, subdivision (b), shows that it was enacted as part of Senate Bill No. 949 (SB 949) during the 2010 legislative session. SB 949 amended Vehicle Code sections 21 and 21100. The bill's author introduced the legislation to address a then-existing problem with several local governments which had

---

**4**      Vehicle Code section 210 provides: "An 'automated enforcement system' is any system operated by a governmental agency, in cooperation with a law enforcement agency, that phographically records a driver's responses to a rail or rail transit signal or crossing gate, or both, or to an official traffic control signal described in Section 21450, and is designed to obtain a clear photograph of a vehicle's license plate and the driver of the vehicle."

11

"elected to make it their official policy to ignore certain moving violations and penalties in the [Vehicle Code] and punish these offenses under their own local ordinances." (See Assem. Com. on Transportation, Bill Analysis on Sen. Bill No. 949 (2009-2010 Reg. Sess.) June 28, 2010.) The local governments had established ordinances covering violations identical to ones contained in the Vehicle Code; had imposed their own fines; had failed to charge state-mandated fees, surcharges, and penalty assessments; and, thus, had retained all of the revenues for themselves. (*Ibid.*) SB 949 addressed this situation by amending Vehicle Code section 21100 to include subdivision which would disallow local governments from pursuing the practice of enacting alternate traffic ordinances to keep their own money while depriving the state of its money. (See Stats. 2010, ch. 616, § 2 et seq.)

In conjunction with amending Vehicle Code section 21100, SB 949 also amended Vehicle Code section 21 to add subdivision (b) noted above. The addition of subdivision (b) to Vehicle Code section 21 was intended by the bill's author to address a "concern" that the bill's provisions concerning Vehicle Code section 21100 might be construed to "preclude park districts from enforcing traffic restrictions they are authorized to enact." (Assem. Com. on Transportation, Bill Analysis of Sen. Bill No. 949, *supra*.) As more fully explained in the bill analysis: "[T]here is some concern that [SB 949] might preclude park districts from enforcing traffic restrictions they are authorized to enact by the Public Resources Code. This bill should therefore be amended to provide that 'Nothing in this article shall impair or be construed to impair the authority of any local park authority or district whose authority is established pursuant to a separate state code to enact or enforce any ordinance relating to the management of public lands and parklands or to establish a fine, penalty, assessment, or fee for violation thereof.'"

Everett argues that the legislative history shows that MRCA's authority to control traffic within its parklands extends only to the point that it has such authority under the Public Resources Code, and that this does not include the authority to ignore the Vehicle Code. In short, Everett argues that MRCA's authority to regulate traffic as given by the Public Resources Codes is not independent from, but is subject to, the requirements of the

12

Vehicle Code. In support of this proposition, Everett further cites a number of published cases which hold that the state legislature has preempted the field of motor vehicle traffic regulation and that any authority delegated to local authorities to regulate traffic is strictly construed. In this regard, Everett cites such cases as *Rumford v. City of Berkeley* (1982) 31 Cal.3d 545, 548–550, *Save the Sunset Strip Coalition v. City of West Hollywood* (2001) 87 Cal.App.4th 1172, 1177, and *City of Lafayette v. County of Contra Costa* (1979) 91 Cal.App.3d 749, 755. Everett argues that any delegation of power to prescribe traffic rules must be expressly, not impliedly, authorized by the Legislature. (Citing *Rumford v. City of Berkeley, supra*, 31 Cal.3d at p. 550.)

We reject Everett's arguments because, while correctly citing the law concerning the supremacy of state law, he errs in the application of the law. His case is an example where the Legislature has expressly authorized a particular local authority, namely parks and recreation districts, to exercise power to prescribe traffic rules through Vehicle Code section 21, subdivision (b). In other words, the situation which SB 949 did not want to be practiced — a local county or city government enacting ordinances to circumvent the Vehicle Code and deny the state certain monies it would otherwise receive — is allowed for park and recreation districts, and, specifically, is allowed to be practiced by MRCA.

Finally, Everett argues that divorcing the Public Resources Code from the Vehicle Code means that MRCA has "carte blanche to ignore the Vehicle Code" when it comes to adopting vehicle regulations on public roadways in the parklands under MRCA's control. This may or may not be true, but it is an issue not presented by Everett's case. Here, we hold only that MRCA's automated video camera traffic enforcement system is not subject to the Vehicle Code's provisions governing automated traffic enforcement systems, and, thus, MRCA is not operating such a system in violation of the Vehicle Code.

## II.     The Cause of Action Labeled "Unjust Enrichment"

Everett contends the judgment of dismissal must be reversed because the trial court erred when it sustained MRCA's demurrer to his cause of action labeled "unjust enrichment" in his first amended complaint. We find no error.

13

The only issue argued in the parties' briefs on appeal regarding the issue of Everett's cause of action for "unjust enrichment" is whether California pleading law recognizes a "cause of action for unjust enrichment." We find "there is no cause of action in California for unjust enrichment." (*Melchior v. New Line Productions, Inc*. (2003) 106 Cal.App.4th 779, 793.) Accordingly, we affirm the judgment in Everett's current case.

## III.    The Statute of Limitations Issue

Having determined that the trial court correctly sustained MRCA's demurrer for the reasons discussed above, we need not and do not address Everett's contentions and arguments concerning the trial court's ruling on statute of limitations issues.

**DISPOSITION**

The judgment is affirmed. Each party to bear its own costs on appeal.

BIGELOW, P. J.

We concur:

FLIER, J.

GRIMES, J.

14

Filed 8/13/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DANNY EVERETT et al., | B254753 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC466880) |
| v. | |
| MOUNTAINS RECREATION AND CONSERVANCY AUTHORITY, | **ORDER CERTIFYING PUBLICATION** |
| Defendant and Respondent. | (No Change in Judgment) |

THE COURT*:

The opinion in the above entitled matter filed on July 15, 2015, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

\* BIGELOW, P. J.          FLIER, J.          GRIMES, J.